## COMMONWEALTH *versus* JAMES LOW.

A town may acquire a right of way by grant, and exclusive uninterrupted user by the inhabitants for twenty years, unexplained, is evidence of a grant; but such way will be a private way, and a nuisance on it will not be indictable.

A public town way can be established only in the mode prescribed by *St.* 1786, *c.* 67 and a record of the establishment of such a way cannot, it seems, be presume from a user for any length of time.

INDICTMENT for a nuisance in erecting a fence on an ancient town way of the town of Chelsea, legally established, which was connected towards the west with another town way, and towards the east with the Greens' farms, over which first men-

---

See *Hall* v. *Young, ante,* 2, note; 82 Stark. Evid. (5th Amer. ed.) 705.

tioned town way all the inhabitants of the town and common-wealth have been used and accustomed to pass with horses, &c., at their own good will and pleasure.

It was proved, on the part of the commonwealth, that the way in question had been known for sixty years ; that the Greens' farms, Butman's estate, and all the land to which the way led and over which it went, was originally the property of persons by the name of Hasey ; that there was no other way to the farms mentioned, and no other way, till within a few years, to the burying-ground ; that there were bars across the way at one or more places, which were taken down and put up as persons passed ; that the farms were considerably to the east of that part of the way which was opposite to the burying-ground ; that, as appeared from entries which were claimed to be town records, the Greens and Butman, in 1780, 1796, and 1808, on special application to the town, were suffered to work out their highway taxes in those years on this way.

The erection of the fence was admitted by the defendant, who claimed under a deed to his grandfather, W. Low, in fee, from D. Jenkins, dated June 17th, 1761, of a tract of land containing the *locus in quo*, which tract is therein described as bounded southerly, "partly on land of the widow Hasey, being a bending line, measuring twenty-six rods and a half," and which bending line is the southern boundary of the way in question. The same deed purports to convey another parcel of land, and subsequently contains these words, — "together with all the rights, &c., and also the pr·vilege of watering at a large spring in Mr. Jacob Hasey's land, a few rods to the southward of the first mentioned piece of land, &c., and also the privilege of draining the first mentioned land through J. Hasey's land, saving and reserving to the heirs of William Hasey, and to the heirs and assigns of Deacou Jacob Hasey, the privilege of a way by the side of the southerly line or crooked side of the first parcel of land before described, through gates or bars, and also a convenient privilege in the same land to the town of Chelsea for burial of the dead."

The defendant gave evidence that gates or bars had been kept up on this way, from time immemorial, as well at the entrance from the other way as at two other places, and that

originally his whole land, north of the south bound of the way in question, lay open and unfenced ; and he contended, that the deed referred to explained the origin of the prescription set up, and in connexion with the fact of the gates or bars being kept up and continued to the present time, negatived any dedication of the way to the public, and prevented its being such a free public way, whereon erecting a nuisance was indictable ; that all which was reserved in the deed was a convenient privilege to the town for burial of the dead, which privilege was not alleged to have been diminished by the defendant, and which had always been qualified by the priv ilege in himself of draining his own land through J. Hasey's land, which is next south of his own, or of the way in question, to the detriment, of course, the whole time such draining might last, of the privilege of burying or of passing that way to the burying-ground ; that if such privilege involves a right in the town, the right is confined to that purpose, and extends therefore only to the part of the way opposite to the burying-ground, and not to the Greens' farms, which are beyond that part.

It was objected, that there was a variance between the way alleged and the one proved by the commonwealth ; that it was not competent, in this State, to prove a public way by prescription, and that if it were, a prescriptive way was not properly set forth in the indictment.

On this evidence, *Wilde* J., who tried the cause, was inclined to the opinion, that the way used as before mentioned was not a public highway ; but in order to bring the question before the whole Court, he instructed the jury that they might consider it as a public town way. They accordingly found a verdict for the commonwealth. If this direction was wrong, the verdict was to be set aside, and by the agreement of the attorney for the commonwealth, a *nolle prosequi* to be entered.

4 1
*March* 18*th*

*Davis*, Solicitor-general. This way may be proved by pre scription. A way may be by prescription or grant, and indictment lies for not repairing it. Com Dig. *Chimin D,* 2, 7 ; *Commonwealth* v. *Charlestown,* 1 Pick. 188. The inhabitants of a town may prescribe for a way, as well as in-

dividuals     *Commonwealth* v. *Newbury*, 2 Pick. 59.    The statute providing a mode of laying out town ways is cumulative. The gates and bars do not prove this to be a private way, for the public may take a way subject to such an incumbrance. I Russell on Crimes, 461 ; *Prov. St.* 5 *W. & M. c.* 8, § 4 ; *St.* 1786, *c.* 81, § 5.   A grant of a right of way may be presumed after an uninterrupted use for twenty years.   *Hill* v *Crosby*, 2 Pick. 466.    This way having been used by the town for sixty years, and having been repaired at their expense, a foundation is laid for presuming that there was once a record of the laying out, which has been lost by time and accident. *Sumner* v. *Child*, 2 Connect. R.   610, 611, 616, 618, 628 ; *Read* v. *Brookman*, 3 T. R. 158 ; *Mayor of Hull* v. *Horner*, Cowp. 110 ;  *Roe* v.  *Ireland*, 11 East, 284 ;   *Goodtitle* v. *Baldwin*, ibid. 488.    The deed from Jenkins to Low does not explain the origin of the way.   The town moreover was not a party to it, and it cannot affect public rights previously existing.    The reservation to the town was only of a place of burial ; it has no reference to a way.    An indictment lies for a nuisance upon a town way.   *Commonwealth* v. *Gowen*, 7 Mass. R. 378.

*Townsend*, for the defendant.   The deed does not warrant the inference drawn from it, for there has been no burying in the land conveyed.    There cannot be a town way by pre-scription.   *Commonwealth* v. *Newbury*, 2 Pick. 57.    Where the origin of a right is shown, there is no room for prescrip-tion ; and here the deed shows the origin of this way.    The argument respecting the gates and bars would be just, if they had been put up by the town, but they were erected by indi-viduals.    The case of *Commonwealth* v. *Gowen* had relation to a town way laid out according to the statute.   This is not a way common to all the citizens of the commonwealth, but a private way, and a nuisance upon it is not indictable.

MORTON J. delivered the opinion of the Court.   The only question presented for our consideration, in this case, is the legal existence of the way described in the indictment.

No record of the laying out of the way by the selectmen of Chelsea, in the manner prescribed by *St.* 1786, *c.* 67, is produced.   But it is contended, that although no such record

Common-
wealth
v.
Low.

can be found, yet that the lawful establishment of the way
may be presumed from the long use of it, as proved upon the
trial

Ways of various kinds may be proved, not only by pre-
scription, but by a continued and uninterrupted use of them
for a period much within the memory of man. And it can-
not be doubted, that public highways may be shown by evidence
of a user, as well as by the record of their laying out. But
whether the same principles apply to town ways, is a question
about which, on several occasions, intimations have fallen from
the Court, but which has never been directly decided.

In the case of *Commonwealth* v. *Newbury*, 2 Pick. 57, the
Chief Justice, in giving the opinion of the Court, observes,
that " it is difficult to conceive how a town way, merely as
such, can be established in any other manner than by laying
out for that particular use by the selectmen of the town, by
virtue of the statute respecting highways. It seems to be
intended by the legislature, that no such ways shall acquire
the character of private town ways, except in the form there-
in provided, and especially by the express allowance of the
inhabitants in regular meeting assembled." This statute gives
to town ways, laid out in pursuance of it, in some respects,
the character of public highways. It imposes upon the town
the duty of keeping them in repair, and renders it liable to
indictment for a neglect of this duty. It declares obstructions
upon town ways public nuisances, and renders those, who
create them, liable to criminal prosecutions. And they are
open to all the citizens of the commonwealth, as well as to
the inhabitants of the particular town by which they are laid
out.

There is no doubt that the inhabitants of a town, in their
corporate capacity, are capable of taking an easement, or
other incorporeal hereditament, and that they may become
seised of a right of way by grant, prescription or reservation.
A grant also may be presumed from continued occupation, as
well in favor of a corporation as of an individual.

If the inhabitants of Chelsea have exclusively and unin-
terruptedly used and enjoyed the way described in the in-
dictment, for more than twenty years, it may warrant the pre-

sumption of a grant. Whether the evidence in this case proves such a use, may, perhaps, be well doubted; but from the view which we take of the law it is unnecessary to decide this question.

If a grant of the way be presumed, it will not support the indictment. It will operate in favor of the town only, and will give no right of passage to any but the inhabitants. It will be technically a private way, and any person other than an inhabitant passing upon it will be a trespasser. If obstructed, no indictment will lie for the obstruction, nor will the town be liable to punishment for neglecting to repair it.

We do not perceive how the record of the establishment of such a town way as is contemplated by the statute, can be presumed from a user of any length of time. If it be used exclusively by the inhabitants of the town, the presumption will be of a grant of a way to the town, which will be strictly a private way, and will not support this indictment. If it be used by the inhabitants of the town in common with other citizens of the commonwealth, it will raise a presumption that the way is a public highway.

Whether in this commonwealth a public highway may be acquired by *dedication* or not,[1] it is very manifest that a town way cannot be thus acquired. The use of it by the inhabitants of a town, if exclusive, might prove a grant to the town, but would negative a dedication to the public; if not exclusive, it would prove it a common highway, and not a town way.

We are therefore of opinion, that a town way can be established only in the mode prescribed by *St.* 1786, *c.* 67, [see Revised Stat. *c.* 24, § 66, *et seq.*] and that there is no evidence that the way in question was so established.[2]

*Verdict set aside and a nolle prosequi entered.*

---

[1] See *Hinckley* v. *Hastings*, 2 Pick. (2d ed.) 164, note.

[2] See Revised Stat. *c.* 25, § 26. See also *Todd* v. *Rome*, 2 Greenl. 55; *Rowell* v. *Montville*, 4 Greenl. 270; *Estes* v. *Troy*, 5 Greenl. 368; *Jones* v. *Andover*, 9 Pick. 146.