WHEELING, P. & B. R. CO. v. CHARLES WARRELL.

ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 17, 1888—Decided October 29, 1888.

| | |
|---|---|
| 122 | 613 |
| 130 | 608 |
| 130 | 610 |
| 122 | 613 |
| 131 | 414 |
| 122 | 613 |
| 145 | 515 |
| 122 | 613 |
| e 22 SC | ⁵166 |
| e 22 SC | ⁶170 |
| 122 | 613 |
| 208 | ⁶567 |
| e208 | ⁶568 |

(a) The Hempfield R. Co., in 1855-7, constructed its roadway upon land of which the plaintiff then owned one ninth, and in 1860, under a submission by all the parties in interest, the quantity of the appropriation and the amount of compensation to the landowners were ascertained by an award made.

(b) In 1871, the property and franchises of the Hempfield R. Co. became vested in fee in the W. P. & B. R. Co., which thenceforward operated the railroad undisturbed until 1884, when the plaintiff, who then had acquired the entire interest, brought ejectment for the land occupied.

(c) The compensation to the landowners, as ascertained by the award of 1860, had never been paid by either company, nor had its payment been secured by bond accepted, or tendered, refused and filed according to law.

1. The plaintiff, though owning but one ninth of the land when the entry was made and acquiring eight ninths of it afterward, had the right to maintain the suit.

2. The only method by which the defendant company, or its predecessor, could have acquired any right whatever in the land, was by the payment of compensation to the owners thereof, or by the tender of a bond with sufficient security therefor, according to law.

3. No presumption of payment, or of a tender of security, arose in favor of the company from the lapse of time or from the award of 1860; it was bound to show its right affirmatively, or fail in its defence against the ejectment.

4. But the award of 1860 and the agreement on which it was founded exhibited an equity which properly reduced the recovery to a conditional judgment, and thus relieved the defendant from a total loss of its improvements.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 142 October Term 1888, Sup. Ct.; court below, No. 233 November Term 1884, C. P.

On October 11, 1884, a summons in ejectment was issued by Charles Warrell against the Wheeling, Pittsburgh & Baltimore Railroad Co. to recover a strip of land described, "containing about 5.22 acres, being in the possession and occupancy of said defendant corporation and used as a railroad track." The defendant pleaded, not guilty.

At the trial on March 21, 1888, it was admitted that the defendant company was in possession of the land. The plaintiff then showed a title in himself at the time the suit was brought, and rested.

The defendant then moved for a judgment of compulsory nonsuit, for the reasons:

1. The plaintiff has not shown that the acquisition by Charles Warrell of title to the land in controversy antedated the location and construction of the railroad track thereon, and that he has any interest in the damages arising from such location and construction, or holds otherwise than subject to the easement acquired by the railroad company in and by its entry and appropriation.

2. No evidence has been offered to rebut the presumption that the entry of the railroad company was regular and in compliance with law, and was accompanied by payment of, or security for, the damages arising from such entry.

By the court: The plaintiff has shown a legal title to the land in dispute and therefore made a prima facie case; motion refused.

The defendant then put in evidence the act incorporating the Hempfield Railroad Company, and its supplements: Act of May 15, 1850, P. L. (1851) 862; Act of April 12, 1851, P. L. 471, 472. Also certain mortgages executed to secure bonds issued, bearing dates October 11, 1856: Book 2, 139;

November 29, 1856 : Book 2, 141; February 5, 1857 : Book 2, 142; and instruments of date February 5, 1857, and February 26, 1857, evidencing delivery of possession of the road to the mortgage trustees : Book 2, 143, 146.   Also deed of Seal et al., trustees, to John King, Jr., dated March 30, 1871; Book T., vol. 4, p. 614, showing a sale of the property and franchises of the road to the grantees, authorized and confirmed by the decree of the Supreme Court.   It was admitted that the decree of confirmation provided that said King should hold the road and property sold, " subject to any legal claims or rights which may exist prior to or paramount to the mortgage."   The defendant also put in evidence deed of John King, Jr., to the Wheeling, Pittsburgh & Baltimore Railroad Company dated March 7, 1876 : Book R., vol. 5, p. 612.

It was then shown that the Hempfield Railroad Company entered upon the land in dispute, perhaps in 1854 or 1855, and constructed a roadway through it in the fall of 1857.

The execution of the papers being admitted, the defendant then offered an agreement under seal between James Warrell, Charles Warrell, Sarah Ann Warrell, William Warrell, and Rebecca Miller and Rev. John Miller, her husband, of the one part, and the Hempfield Railroad Company, of the other part, dated September 29, 1860, providing "that the assessment of damages to the property of the parties of the first part, by the construction of the said railroad through it, be referred to William Herron and Moses Bell, who shall choose an umpire, which three arbitrators shall meet upon the lands of the parties of the first part, shall fix and determine the quantity of said lands appropriated and necessary to be appropriated by the said company, . . . . . and shall ascertain and determine all damages sustained by the said parties of the first part by reason of the construction of the said railroad, and whose award, or that of a majority of them, shall be final and conclusive without exception; . . . . . and it is further agreed that a credit of five years be given for the payment of said award," etc. : And in connection therewith, the award of the referees, dated October 24, 1860, fixing and determining the quantity of land appropriated and necessary to be appropriated, at 5.22 acres, according to a plot and diagram annexed and made a part of the award, and ascertaining the amount of damages

sustained by the said James Warrell, Charles Warrell, et. al., at $800. The land described in the attached plot was identical with the land described in the writ in this case.

The offer of these writings was objected to by the plaintiff, as incompetent and irrelevant, unless the defendant proposed to follow with evidence that the parties of the first part to the submission had title to the land, and further, that the railroad company, the party of the second part, had either paid the damages liquidated in the award, or had secured the payment thereof according to law.

By the court: Objection overruled, offer admitted, exception.

The case was then closed upon the evidence, when the parties agreed by writing filed to dispense with the jury and to submit the cause to the decision of the court upon the evidence adduced, under the act of April 22, 1874, P. L. 109.

After argument, the court, McILVAINE, P. J., on April 9, 1888, filed the following decision:

I. Facts found.

1. The plaintiff, Charles Warrell, on October 11, 1884, instituted an action of ejectment in this court to recover the possession of a narrow strip of land containing 5.22 acres, which is a part and parcel of a larger tract of land situated in Donegal township, in this county, containing 151 acres and 83 perches. At the time this suit was instituted Charles Warrell, the plaintiff, was the owner in fee of the whole of the 151 acres and 83 perches and was in possession of all of it except the said 5.22 acres. The defendant, a duly incorporated railroad company, was then in possession of the 5.22 acres and was using it as a way, through the plaintiff's 151 acre farm, on which their tracts were laid and over which their trains regularly ran.

2. The Hempfield Railroad Company was incorporated on May 15, 1850, by a special act of assembly of this commonwealth, P. L. 1851, 862, and its charter then granted was amended by an act of assembly, approved April 12, 1851, P. L. 471–472. Under its charter it had authority to construct and operate a railroad through this 151 acre tract of land, subject to the provisions of the general railroad act of February

19, 1849, P. L. 79, in regard to damages. This company in 1855 entered upon this farm and appropriated 5.22 acres as a right of way, and in the years 1855, 1856 and 1857, constructed a road bed thereon, and in 1857 had a railroad in operation from Wheeling, West Va., to Washington, Pa., which ran through the farm and over the right of way, and which has continued in operation ever since, except a short period of time in the latter part of the year 1857.

3. In 1856 and 1857 the said Hempfield Railroad Company executed three mortgages upon their railroad property in trust for its creditors. On March 30, 1871, the trustees named in these mortgages sold the company's property to John King, Jr., and the Supreme Court of Pennsylvania, in confirming said sale, decreed " that the said King should hold the property subject to any legal claims or rights which may exist prior or paramount to the mortgages." John King, Jr., conveyed the road and property to the Wheeling, Pittsburgh & Baltimore Railroad Company, the defendant in this suit, by deed dated March 7, 1876.

4. [Neither the Hempfield Railroad Company, John King, Jr., the defendant company, nor any person for them, has ever either paid or secured the damages done to this 151 acres and 83 perches of land by reason of the location and construction of this railroad through it, to the parties entitled to the same.] [1]

5. In 1855, when the Hempfield Railroad Company first entered upon this 151 acre farm and made an appropriation of the land in dispute, and in 1855, 1856 and 1857, when the road was constructed and put in operation, Charles Warrell, the plaintiff, lived on the farm with his father, but owned in fee only an undivided one ninth thereof; five ninths at that time belonged to James Warrell, Sr., his father, now deceased; one ninth to Sarah Ann Warrell, now Oliver, a sister; one ninth to Rebecca Warrell, now Miller, a sister, and one ninth to William Warrell, a brother. On March 26, 1866, Sarah Ann Oliver and her husband W. L. Oliver, conveyed the undivided one ninth interest of Sarah Ann Oliver in the farm to the plaintiff, Charles Warrell. James Warrell, Sr., died March 6, 1867, leaving a will which was duly probated March 9, 1867, in which he devised to Charles Warrell, the plaintiff, his interest in this 151 acre tract of land. On March 23, 1867,

William Warrell conveyed his undivided one ninth interest to Charles Warrell, the plaintiff, and on November 8, 1867, Rebecca Miller and John V. Miller conveyed Rebecca's undivided one ninth to Charles Warrell, the plaintiff, so that at this last named date he became the owner in fee of the whole of this 151 acres and 83 perches.

6. On September 29, 1860, the Hempfield Railroad Company, by its duly authorized agent, James C. Acheson, of the one part, and James Warrell, Sr., Rebecca Miller and her husband, William Warrell, Sarah Ann Warrell, now Oliver, and Charles Warrell, the then owners of this 151 acre tract of land, of the other part, agreed to refer the assessment of damages done by the construction of the railroad to three men, which agreement is in the words and figures following : [set out here at length, but abstracted, supra.] This award was accepted by the railroad company and the parties in interest as a final ascertainment of the amount of damages done to this tract of land [but no part of said award has ever been paid or secured to the parties entitled to the same].[2]

II. Points submitted by defendant's counsel and answers thereto.

1. The title to the land in dispute having been, at the time of the location and construction by the Hempfield Railroad Company of its railroad thereon, in James Warrell, Charles Warrell, Sarah Ann Warrell, William Warrell and Rebecca Miller, the plaintiff, Charles Warrell, cannot recover in this action without showing that the conveyance or transfer to him of the title of his co-owners included or was accompanied by a transfer of their interests in the damages arising from such location and construction. This not having been done, the judgment must be for the defendant.

Answer: Refused.[5]

2. The damages arising from the location and construction of the railroad upon the land in dispute belong to the owners of the land at the time of the entry thereon, and in his subsequent acquisition of the undivided interests of the other owners in and to said land, the plaintiff took subject to the easement acquired by the company thereon, and is not entitled to damages except to the extent of his own interest in the land at the time of such entry.

Answer: As an abstract proposition of law this point is affirmed: but the plaintiff, holding the title to the whole of the land at the time suit was brought, and the damages done to his undivided one ninth interest as well as the other eight ninths interest never having been paid or secured, he is entitled to recover, and the judgment becomes a security for the payment of all the damages, to be distributed under the direction of the court.[6]

3. Where a railroad company has entered under its charter upon real estate, the right of possession and the right to the damages must be centered in the plaintiff in order to enable him to maintain an action of ejectment against the said company, or its successors.

Answer: Refused; if the point means that the right of possession and the right to *all* the damages must be centered in the plaintiff. If he is entitled to part of them it is sufficient.[7]

4. If the court find from the evidence that the railroad company in or prior to the year 1860, in pursuance of the powers conferred upon it by its charter, entered upon the land now owned by the plaintiff, and constructed its railroad across and upon the same, with the knowledge and consent, and without objection on the part of the owner of the lands at that time, then the action of ejectment cannot be maintained and the judgment of the court must be for the defendant.

Answer: Refused; as there is nothing in the case to show that the owners of the land ever released their constitutional right to have the damages paid or secured, or that they ever waived or released any of their rights in the premises.[8]

5. The presumption, in the absence of evidence upon the subject, is that the Hempfield Railroad Company in entering upon and appropriating for its road the land in controversy, did so in a regular manner and complied with the law by giving bond to the owners. There being no evidence in the case to rebut this presumption, this action cannot be maintained and the judgment must be for the defendant.

Answer: Refused.[9]

6. Under all the evidence in this case the plaintiff cannot recover.

Answer: Refused.[10]

7. In case the court should overrule the foregoing points

Decision of Court below.

and decide that the plaintiff is entitled to recover a judgment in this action, then the court is respectfully asked to find that the judgment should be a conditional one, to be released upon the payment into court by the defendant, within a time to be fixed by the court, of the amount of the award made October 24, 1860, under amicable proceedings between the then owner of the land and the Hempfield Railroad Company, with interest thereon, the said money when so paid to be distributed by the court to such persons as it shall adjudge to be entitled to receive or share in the same; and the persons so adjudged to be entitled thereto, to have leave to take the same out of court, only upon filing in court sufficient deeds of release of the damages arising from the appropriation by the defendant's predecessor, the Hempfield Railroad Company, of the land described in the praecipe and writ, for the purpose of its railroad.

Answer: Affirmed and approved.

8. That in counting interest for the purposes of the last preceding point upon the award therein mentioned, interest should be counted only from the date at which the defendant took possession of its railroad in 1871, and not from the date of the award.

Answer: Refused.[11]

III. Conclusions of law.

1. The plaintiff having shown title in himself at the time this action was brought to the land in dispute, and the defendant company having failed to show [and not claiming][4] that it or its predecessor, the Hempfield Railroad Company, or John King, Jr., ever paid or secured to the plaintiff and his co-tenants in common the damage done to this 151 acre tract by the appropriation of the land in dispute, [we hold that the plaintiff is entitled to recover the possession of the land described in the writ.][12]

2. The parties who owned this 151 acre tract of land at the time the appropriation of the land in dispute was made, of whom the plaintiff was one, and the Hempfield Railroad Company, having agreed by arbitration upon a sum at which the damages done should be fixed, and the defendant company being entitled to all the rights in the premises which the Hempfield Company possessed, [we hold that it is equitably

entitled to a right of way over the plaintiff's farm to the extent of the land in dispute, upon the payment of the $800 damages assessed under agreement of the parties, with interest from October 24, 1860.] [13]

3. Charles Warrell, the plaintiff, being the owner of only an undivided one ninth interest in the 151 acres at the time the appropriation of the land in dispute was made, and it not appearing in this case whether the other then co-tenants in common with him ever disposed of, transferred or assigned their interest in said damages, in order to protect the defendant company as well as the parties to whom said damages may now rightfully belong, we are of opinion that the said $800, with its interest, should be paid into court to be distributed by the court through an auditor appointed for that purpose.

IV. Judgment.

[And now, April 9, 1888, is ordered and directed that this decision be filed in the prothonotary's office, and that notice of such filing by him be forthwith given to the parties or their attorneys, and if no exceptions thereto are filed in said office within thirty days after said notice shall have been served, then judgment to be entered against the defendant and in favor of the plaintiff for the land described in his praecipe and writ, and costs of suit; on this condition, however, that if the defendant company pay into this court within sixty days from the entry of judgment the sum of twenty-one hundred and eighteen dollars, to be distributed by the court to and among the parties entitled to the same, and the costs of this suit, then said judgment to be released; otherwise to remain in full force and effect.] [14]

On May 3, 1888, the defendant company filed exceptions, that the court erred—

I. As to the questions of fact:

1, 2. In the findings of fact embraced in [ ] [1] [2]

3. In not finding, in view of the lapse of time, that the damages for which the award was made "have been either paid or secured." [3]

4. In the finding in the 1st conclusion of law embraced in [ ] [4]

II. As to conclusions of law:

1–7. In the answers to defendant's points, marked [5 to 11]

8. In the conclusion of law embraced in [ ] [12]

9 In the conclusion of law embraced in [ ] [13]

10. In the order fixing the terms upon which judgment was to be entered.[14]

On June 27, 1888, the court filed a final order and decree overruling all the foregoing exceptions and directing judgment to be entered in favor of the plaintiff, for the land described in his praecipe, and writ and costs of suit, with the condition, however, as set out in the order of April 9, 1888.

Thereupon, the defendant company took this writ and assigned as error:

1–14. The overruling of defendant's said exceptions, supra.

15. The order and final decree of June 21, 1885.

*Mr. John W. Donnan* (with him *Mr. Jas. I. Brownson, Jr.*), for the plaintiff in error:

1. A breach of the law cannot be presumed; on the contrary, the presumption is that every person has conformed to the law, until the contrary appears by proof, the burden of which is upon him who alleges it: Horan v. Weiler, 41 Pa. 470; Winlack v. Geist, 107 Pa. 297. This principle certainly requires that, in the absence of any evidence to the contrary, especially after so long a lapse of time, the entry of the Hempfield Railroad Company is to be taken as having been made in compliance with law. The entry, if made without doing one of two things, either paying or securing compensation, would be unlawful, a trespass. As a trespass is never presumed, it must be assumed that the law was complied with. True, the submission for the assessment of damages entered into five years after the entry, shows that payment did not precede the entry; the presumption therefore must be that the other alternative, security, was adopted and observed.

2. If there is such a presumption, then the defendant's fifth point, asking the court to say that by reason of such presumption, unrebutted, the judgment should be for the defendant, ought to have been affirmed. This follows from the decisions in Fries v. South. Penn. R. Co., 85 Pa. 73, and Hoffman's App., 118 Pa. 512, holding that the giving of a bond discharges the landowner's claim on the land taken, and turns him over to a

proceeding upon his bond.   Even if ejectment could be maintained in the absence of a bond, where the damages have not been paid, under these decisions there can be no such action after the giving of the constitutional security.

3. There are many cases in which it is held that if a railroad company enter upon land in the presence of and with the knowledge and consent of the owner, and expend its money in making its railroad thereon, the owner is estopped to deny or revoke the parol license upon the faith of which the defendant has expended its money.   He cannot allege that the possession is unlawful, either in an action of ejectment or trespass ; his remedy is confined to seeking payment of the damages done : Chicago etc. R. Co. v. Taylor, 22 Amer. & E. R. C. 123 ; Pryz By Low Icz v. Missouri River R. Co., 17 Fed. R. 493 ; Blair v. St. L. H. & K. R. Co., 24 Fed. R. 541.   The evidence in the present case brings it within the principle of the cases cited.   Moreover, the contract of 1860, plainly recognizes the possession of the company as then being lawful.

4. Damages arising from the appropriation of land under the right of eminent domain, belong to the person who is the owner at the time.   The company's title to the easement dates from its entry with the assent, or without the objection, of the owner, and any subsequent vendee takes subject to this easement : Lawrence's App., 78 Pa. 365 ; Davis v. Railroad Co., 114 Pa. 308.   The plaintiff, therefore, holding the eight ninths of the legal title, subject to the easement of the defendant, cannot be allowed to use the same to eject the defendant from its easement, if it fail to make payment of moneys of which the plaintiff is entitled to but the one ninth.   Moreover, as it is plain that the defendant may retain possession upon making payment of the award, it is necessary for the court, in order to make the judgment a security for the whole award, erroneously to assume to adjudicate upon the rights of persons who are not parties to the action at all.

5. There is no privity between the old company and the new upon which any liability of the new company for the general debts of the old could be founded : Stewart's App., 72 Pa. 291. User of the ground is the only basis of any obligation of the new company to pay the amount assessed against the old company for its appropriation : West. Penn. R. Co. v. Johnston, 59

Pa. 290; Potter v. Pittsb. S. Ry. Co., 17 W. N. 40. There-
fore, as the award can be binding on the defendant only by
reason of its user of the land, and as it was in no default for
non-payment prior to its possession in 1871, interest on the
award ought not to have been counted back of that time.

*Mr. John D. Braden* (with him *Mr. R. W. Irwin, Mr. E. E.
Crumrine* and *Mr. Boyd Crumrine*), for the defendant in error:

1. When a cause is submitted to the judge without a jury,
under the act of April 22, 1874, P. L. 109, error cannot be
assigned to the findings of fact in the decision: Jamison v.
Collins, 83 Pa. 359; Griffith v. Sitgreaves, 90 Pa. 161; Lee v.
Keys, 88 Pa. 175; Butterfield v. Lathrop, 71 Pa. 275; Martin-
ton v. Fairbanks, 112 U. S. 670.

2. An action of ejectment does not necessarily presume a
tortious dispossession by the defendant. The proof of a legal
title by the plaintiff, presumes only that the defendant's pos-
session is illegal against the plaintiff, until shown to be other-
wise. But the entry by a railroad company, duly incorporated
to construct a railroad, is, " not the case of a trespass by one
having no authority to enter, but of one representing the state
herself, clothed with the power of eminent domain and having
a right to enter " upon certain well defined conditions: Justice
v. Railroad Co., 87 Pa. 28. Moreover, the presumption which
the defendant seeks to set up, that security by a bond was
given, must be a presumption of fact, if any at all. Now,
though defendant had statutory authority to enter, upon con-
ditions, and though its entry was not by a strong hand, or by
fraud, or as a tort-feasor in any way, and was continued peace-
ably, it is not at all a necessary inference that security was
accepted or tendered. No logic whatever can raise such an
inference from the facts in evidence. But the defendant, by
a logic the force of which we cannot see, presumes a bond into
the case, and then seeks to put the plaintiff out of court,
because he does not proceed upon the bond. If this logic be
good for the defendant, it is good for the plaintiff, and suppose
the plaintiff had sued upon a bond, not given and lost, but
presumed to have been given!

3. The western cases cited upon the point that a landowner,
with whose consent or knowledge a railroad company has

entered and constructed its road, is afterwards estopped from alleging that the company's possession is unlawful, for instance, Chicago etc. R. Co. v. Taylor, 22 Am. & E. R. C. 123, are decided upon statutory provisions providing a method of perfecting the title of a company when it has been suffered to enter, etc., without previous payment or security.   In Pennsylvania, however, we have no such statute thus protecting a continuance in unlawful possession, but, under the equitable jurisdiction of our common law courts, where there has been a judgment in ejectment against a railroad company, and the latter is in without having perfected its title, a writ of possession is uniformly stayed until proceedings may be had by the company for the ascertainment of the compensation of the landowner: Justice v. Railroad Co., 87 Pa. 28; Harrisburg v. Crangle, 3 W. & S. 460; McClinton v. Railroad Co., 66 Pa. 404; Delaware etc. R. Co. v. Burson, 61 Pa. 369; P. & L. E. R. Co. v. Bruce, 102 Pa. 23.   The Pennsylvania cases cited by the defendant, upon the point referred to, have no application.

4. The constitutional provision which prohibits the taking of private property for public use, " was designed to operate, and it does operate, to prevent the acquisition of any title to land or to an easement in it, or to a permanent appropriation of it, from an owner for public use, without the actual payment or tender of a just compensation for it.   The right to a temporary occupation as an incipient proceeding will become extinct by an unreasonable delay to perfect proceedings, including the actual payment or tender of compensation, to acquire a title to the land or an easement in it : " Cushman v. Smith, 34 Me. 247, quoted in note to Pierce, Railroads, 165.   The question, therefore, is in this shape : The plaintiff in a possessory action at common law has shown an undisputed title in fee to land occupied by the defendant company, whose occupancy by its own default has never yet been made lawful either as against the plaintiff or as against any preceding owner.   The plaintiff is therefore entitled to judgment in his favor, although he may not dispossess the defendant, as the latter may yet proceed according to law to perfect his unlawful occupancy into a lawful right : West. Penn. R. Co. v. Johnston, 59 Pa. 290 ; McClinton v. Railroad Co., 66 Pa. 404 ; Justice v. Railroad Co., 87 Pa.

28 ; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319 ; Phil. etc. R. Co. v. Cooper, 105 Pa. 239.

5. The points made under the fifth to seventh specifications of error are all sufficiently answered by the fact, which all through the case is ignored by our opponents, that in this action the plaintiff does not seek for a recovery of land-damage, under the submission and award, in whole or in part. As the plaintiff's right to recover depended upon his enjoyment of a perfect legal title, unaffected by the unlawful possession of the defendant, and not upon the extent of his interest in the award made in 1860, then, even if the answers to the defendant's second and third points were erroneous, the defendant cannot complain, as it was the defendant alone that asked that the condition be attached to plaintiff's judgment if he recover one : See the defendant's seventh point. How can defendant complain of error in granting its own prayer ? A conditional judgment was of extreme grace ; not of the slightest right : McClinton v. Railroad Co., 66 Pa. 404; Justice v. Railroad Co., 87 Pa. 28, and especially, Phila. etc. R. Co. v. Cooper, 105 Pa. 239.

PER CURIAM :

This case is not very complex either in its facts or in the law governing them. The only method by which this company, or its predecessor, could acquire any right whatever in lands, was by making composition with the owner or owners thereof, or by the tender of a bond with sufficient security to cover the damages which might result from its entry and occupancy of the premises, and without so making or securing payment it was absolutely prohibited from such entry or occupancy. From this it follows that there could be no presumption in favor of the company: it must affirmatively show its right or fail in its defence. The award of October 24, 1860, was its only escape from a peremptory and immediate ejectment. By that award, and the agreement on which it was founded, it exhibited an equity which properly reduced the judgment to a conditional one, and thus relieved the defendant from a total loss of its improvements. That the plaintiff had the right to maintain this suit there is no doubt. He was the owner of the legal title ; hence, was the proper person to

enforce the award. But, without this, if he were but one of a number of tenants in common, his right to maintain ejectment could not be questioned. Finally, after a careful scrutiny of this case, we are free to say that the learned judge of the court below has disposed of it with admirable clearness and precision, and we, without hesitation, adopt what he has done.

> The judgment is affirmed with a stay of execution for 90 days from the date of the filing of this opinion, within which time the defendant may pay off the judgment with its interest and costs.