Carter *v.* Ridge Turnpike Company, Appellant.

*Turnpike companies—Adverse possession—Presumption of grant—Eminent domain.*

Where a turnpike company enters upon land and constructs its road thereon, and the owner makes no objection during his lifetime, and there is nothing to show that the company entered under the exercise of its right of eminent domain, or under what circumstances the entry was made, and the company continues in open, notorious, adverse and continuous possession of the land for twenty seven years without objection from anyone, it will be presumed that the company entered under a purchase, grant or gift from the owner, and its title is good by adverse possession.

The mere fact that a corporation has a right to take an easement in land or a limited fee, does not preclude it from taking a full fee simple in land by purchase or gift.

Argued Jan. 21, 1902. Appeal, No. 52, Jan. T., 1902, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1899, No. 763, for plaintiff on case tried by the court without a jury in case of Pulaski P. Carter, Marvin P. Carter and Amelia M. Kennedy v. Ridge Turnpike Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Ejectment to recover a strip of land in the city of Scranton. Before KELLY, J.

The facts are fully stated in the opinion of the Superior Court.

*Error assigned* was entering of judgment for plaintiffs.

*E. N. Willard*, of *Willard, Warren & Knapp*, for appellant.— All the essentials of title by adverse possession were present in this case: Lehigh Valley R. R. Co. v. McFarlan, 43 N. J. L. 605; Overfield v. Christie, 7 S. & R. 173; Cunningham v. Patton, 6 Pa. 355; St. L. A. & T. H. R. R. Co. v. Nugent, 152 Ill. 119 (39 N. E. Repr. 263); James v. Ind. & St. Louis R. R., 91 Ill. 554; Faloon v. Simshauser, 130 Ill. 649 (22 N. E. Repr. 835); Probst v. Board of Missions, 129 U. S. 182 (9 Sup. Ct. Repr. 263); Leffingwell v. Warren, 2 Black. 599; Tolson v. Kane, 3 Brod. & Bing. 217; Lewis v. Marshall, 5 Pet. 470; Sherlock v. Louisville, etc., Ry. Co., 115 Ind. 22 (17 N. E. Repr. 171); Bicknell v. Comstock, 113 U. S. 149 (5 Sup. Ct. Repr. 399); Dickerson v. Colgrove, 100 U. S. 578; Campbell v. Holt, 115 U. S. 620 (6 Sup. Ct. Repr. 209); Sharon v. Tucker, 144 U. S. 533 (12 Sup. Ct. Repr. 720); Wahl v. Pitts. & West. Ry. Co., 158 Pa. 257.

A railroad company may acquire title to land by adverse possession for the full period prescribed by the statue of limitations in the same manner as an individual. But such possession must be continuous and under claim of right, and of such a character as to give notice to the landowner of the company's claim of title to the land: Lehigh Valley R. R. Co. v. McFarlan, 43 N. J. L. 605; Penna. R. R. Co. v. Thompson, 45 N. J. Eq. 870 (19 Atl. Repr. 622); Baldwin v. Calkins, 10 Wendell, 166.

Corporations endowed with the power of eminent domain may acquire a prescriptive title, notwithstanding the obligation to make just compensation for property taken: Am. Bank Note Co. v. N. Y. Elevated R. R. Co., 129 N. Y. 252 (29 N. E. Repr. 302); Zahn v. Pitts., etc., Ry. Co., 184 Pa. 66; Wayzata v. Great Northern Ry. Co., 50 Minn. 438 (52 N. W. Repr. 913); City of St. Paul v. Chicago, etc., Ry. Co., 63 Minn. 330 (63 N. W. Repr. 267); Marchand v. Maple Grove, 48 Minn. 271 (51 N.

W. Repr. 606); R. R. Co. v. Hambleton, 40 Ohio, 496; Indiana, Bloomington & Western Ry. v. Allen, 113 Ind. 581 (15 N. E. Repr. 446); Florida Southern Ry. Co. v. Loring, 2 U. S. App. 310 (51 Fed. Repr. 932).

The right of the turnpike company began at the time of the original entry.    The statute of limitations began at that time, and after twenty-one years its title and right of possession became perfect: Lawrence's App., 78 Pa. 365; Wheeling, P. & B. R. R. Co. v. Warrell, 122 Pa. 613; Phila., etc., R. R. Co. v. Cooper, 105 Pa. 239.

The case at bar is within the principle laid down in Wahl v. Pittsburg & Western Ry. Co., 158 Pa. 257; Garrett v. Jackson, 20 Pa. 331; Hudson v. Watson, 11 Pa. Superior Ct. 266.

*S. B. Price*, for appellees.—If a company vested with the power of eminent domain enters upon land, without complying with the act of assembly, it cannot acquire title by the statute of limitations or by prescription: Wheeling, Pittsburg & Baltimore Ry. Co. v. Cleland, 37 Leg. Int. 466; Scranton v. D. & H. Canal Co., 1 Lack. Jurist, 149; Hannum v. Borough of West Chester, 63 Pa. 475; Western Penna. R. R. Co. v. Johnston, 59 Pa. 295; Borough of Harrisburg v. Crangle, 3 W. & S. 460.

Ejectment will lie where compensation has not been made for land taken under the right of eminent domain: Wheeling, P. & B. R. R. Co. v. Warrell, 122 Pa. 613; Graham v. Pittsburg R. R. Co., 145 Pa. 504.

Opinion by Orlady, J., February 11, 1903:

This is an action of ejectment brought to recover possession of a strip of land about fifty feet in width, comprising one and nine tenths of an acre, situated in the first ward of the city of Scranton, and occupied by the defendant as a part of its turnpike.    On the trial, after the evidence was closed, the parties, plaintiffs and defendant, agreed that a juror should be withdrawn and the case be tried before the court on the evidence already taken, under the provisions of the Act of April 22, 1874, P. L. 109.

Among the facts found by the court were the following: Third. " In the year 1842, Pulaski Carter took possession of

an undivided one half of the land, and in 1850, he obtained possession of the other half of the land in suit. In 1842, he and his cotenant to 1850, and he individually after that time, occupied the land, tilled it and used as his own until 1872 or 1873, when the turnpike company took possession and opened a road over the land in dispute."

Fifth, seventh and eighth. "The Ridge Turnpike Company is a corporation organized and existing under a certain act of assembly, approved March 1, 1870, P. L. 285."

"The defendant took possession of the land described in the writ in 1872 or 1873, and has been in the continuous and uninterrupted possession of the same until the present time, using it as a turnpike road."

"There is no evidence in the case to show that the defendant ever paid for the land or entered security therefor, or to show by what proceeding or under what circumstances it entered into possession." The writ in this case was issued on November 8, 1899.

The court directed judgment to be entered against the defendant and in favor of the plaintiffs for the land described in the præcipe and writ, with costs of suit.

The Ridge Turnpike Company was incorporated by an act of assembly, by which certain persons therein named were incorporated and constituted a body politic, subject to all the provisions and restrictions, and entitled to all the privileges and rights of an act regulating turnpike companies, approved January 26, 1849, and the several supplements thereto. Among the powers and privileges granted by the Act of 1849, P. L. 10, to turnpike companies to be incorporated thereunder, is that of "purchasing, taking and holding to them and their successors and assigns, and of selling, transferring and conveying, in fee simple, or for any less estate, all such lands, tenements and hereditaments and estate, real and personal, as shall be necessary to them in the prosecution of their works."

The 6th and 9th sections of the act provide for the entry upon the lands, and the manner of assessment of damages in case of disagreement with the landowner. The 9th section closes with the proviso "that no part of this act shall authorize the taking of any property by such company unless the same be previously paid for, or adequate security given to the owners for the payment therefor."

The learned court below held that the respective rights and powers of railroad companies and turnpike companies were similar, and that the open, notorious, adverse, continuous possession of the land in dispute by the turnpike company was not a bar to the plaintiff's action; and that, under authority of Wheeling, etc., R. R. Co. v. Warrell, 122 Pa. 613, "the only method by which a railroad company could acquire any right whatever in land was by making composition with the owner or owners thereof, or by the tender of a bond with sufficient security to cover the damages which might result from its entry and occupancy of the premises, and that without such security or payment it was absolutely prohibited from entry or occupancy, and that there could be no presumption in favor of the company, as it must affimatively show its right or fail in its defense."

There is no question in this case as to the extent of the taking. All of the land described in the plaintiffs' præcipe has been continuously in the exclusive possession of the turnpike company as a public highway since 1871 or 1872, and while a parallel case is not cited, the application of clearly defined principles requires us to reverse the judgment entered by the court below.

The court below refused the defendant's points which were as follows : " Third, the evidence being undisputed, that the defendant was in possession of the land in question, and continued uninterruptedly in such possession from the year 1872 or 1873, to the time this suit was brought, for a period of over twenty-one years, under the facts of this case defendant acquired a title which cannot now be disputed." " Fourth, such enjoyment of possession in the absence of any evidence of how it began, is presumed to have been in pursuance of a full and unqualified grant, and it was incumbent upon the plaintiffs to prove that the use of the land was under some license, indulgence or special contract inconsistent with the claim of right by the defendant, and having failed to prove such license, indulgence or special contract, there can be no recovery in this case ; " all of which fairly raises the question to be decided.

The defendant company was not limited to its one right under the act of 1849, namely, resorting to condemnation proceedings before taking the land for its charter purposes, but had also the right of purchasing in fee simple all such lands, tene-

ments, hereditaments and estate, real and personal, as were necessary to prosecute its works. While the estate acquired under condemnation proceedings is often spoken of as an easement, the term is used for the purpose of distinguishing it from a fee, and in Pittsburg, etc., Ry. Co. v. Peet, 152 Pa. 488, the quantum of title so taken is defined as follows : " Such title is sometimes called an easement, but it is a right to exclusive possession, to fence in, and build over the whole surface, to raise and maintain any appropriate superstructure, including necessary foundations, and to deal with it within the limits of railroad uses as absolutely and as uncontrolled as the owner in fee. There was no such easement at common law, and it may well be doubted if it is not a misnomer to extend to this newly invented interest in land the name of easement, perhaps appropriate enough to the railroad's right of way for its tracks. It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cessor to the use for railroad purposes. But, whatever it may be called, it is, in substance, an interest in the land special and exclusive in its nature, and it may be the subject of special injury by the obstruction of access to the abutting street, and, therefore, within the rule which governs the application of equitable relief."

There can be no doubt of the right of the defendant company to have secured a perfect title by purchase, or by a parol gift of Pulaski Carter of the right to enter upon his land and occupy it for a public use : Moreland v. Moreland, 121 Pa. 573 ; Schafer v. Hauser, 35 L. R. A. 835. The legislature had ample authority to authorize the taking of a fee simple title by the defendant company ; there is no other restraint upon the power of the legislature to authorize the taking of land for public use, except that which imposes the condition of making compensation to the owners : Sweet v. Buffalo, etc., Ry. Co., 79 N. Y. 293.

Had this roadbed continued for a similar length of time as a township road, the plaintiffs would not be entitled to recover, even had it not been founded upon proceedings in the quarter sessions to lay it out (Elliott on Roads, 287, 288, 294) ; and we see no reason why a grant to a corporation may not be presumed from such occupation as is found in this case as well in

favor of a corporation authorized to take title in fee simple by purchase, as in favor of an individual.    See Commonwealth v. Low, 20 Mass. 408.    The reason of the law in the case of a simple taking by a railroad company possessing the right of eminent domain does not exist when it becomes a purchaser: Covert v. P. & W. Ry. Co., 204 Pa. 341, filed January 5, 1903.

" The whole doctrine of prescription is founded upon public policy. · It is a matter of public interest that title to property should not long remain uncertain and in dispute.    The doctrine of prescription is conducive, in that respect, to the interest of society and at the same time is a promotion of private justice by putting an end to and fixing a limit to contention and strife : " Lehigh Valley R. R. Co. v. McFarlan, 43 N. J. L. 605.

" When one uses an easement whenever he sees fit and without direct leave and without objection, it is adverse ; uninterrupted adverse enjoyment for twenty-one years is a title which cannot afterwards be successfully disputed.    Such enjoyment without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant.    The owner of the land has the burden of proof that the use of the easement was under some license, indulgence or special contract inconsistent with a claim of right by the other party : " Hudson v. Watson, 11 Pa. Superior Ct. 266.    This being true of a mere private way, it is more clearly true in a case where the owner of a fee seeks to deprive the public of a highway after a user of twenty-seven years.    The constitutional provision requiring compensation to be made, applies as well to a municipal corporation as to a taking by a turnpike company, and it would be a novel proposition to hold that after such lapse of time a city street laid out by the municipal authorities and used all that time by the public as a highway, could be closed through any form of judicial proceeding by the owner of a fee, without any affirmative proof on his part to show that compensation had not been made or secured.    We see no reason why the act of 1785 does not apply to a highway in the control of a turnpike company where there is no evidence whatever as to whether the company entered in the exercise of its right of eminent domain or as a mere trespasser.    We do not think that the fact that the company had the right of eminent do-

main, standing alone, affects the applicability of the act of 1785. While the question has not been squarely decided in this state, it certainly was not decided or intimated by a majority of the court in Hannum v. West Chester, 63 Pa. 475, where it was held " that a corporation invested with the right of eminent domain could not acquire title to land or an easement over it by adverse possession for twenty-one years. On the contrary, it was intimated that the plaintiff's right to the uninterrupted flow of water might be lost or extinguished by adverse user where a borough is invested with the right of eminent domain.

In Irving v. Media Borough, 10 Pa. Superior Ct. 132, we expressly held that it might be lost or extinguished. There is a right in the defendant based on the presumption of a grant or (to state the proposition in another form) of an appropriation for which compensation was made. In Western Pennsylvania R. R. Co. v. Johnston, 59 Pa. 295, it was held that " the landowner's title to damages could not be extinguished by any adversary proceeding, for it rests not only upon the constitution, but upon the law itself, which provides that no entry or possession should be had until compensation made or security given, hence, it could be extinguished only by payment, release, or limitation ; " referring to Forster v. Cumberland Valley R. R. Co., 23 Pa. 371, where it was held that the statute of limitations may be pleaded in bar of the special statutory remedy provided for the recovery of damages caused in the construction of a railroad, it is stated : Whatever may be the force of that decision, it has no application, for the plaintiff in due season prosecuted his claim to a judgment which now stands as a record and not within the statute . . . . in no view, therefore, can I see how the owner of the soil can be deprived of the compensation secured to him by the law and the constitution, except by his own discharges or dereliction.

In Graham v. Pittsburg, etc., R. R. Co., 145 Pa. 504, the question under consideration here does not arise, as in that case " the fact was established that the original entry by the defendant for the construction of the road was a trespass upon the plaintiff's land and the subsequent maintenance of the road was a continuing trespass until the right of way vested in the company on the approval of the bond." And in Wheeling, etc., R. R. Co. v. War-

rell, 122 Pa. 613, the decision falls short of deciding the precise question. There it was undisputed that the company entered under its right of eminent domain; referees were appointed by the parties, and damages were assessed which have never been paid. · The payment of these damages was the condition precedent of the company's right to continue in the occupancy of the land. There was no room for the presumption that the company entered pursuant to an unqualified grant; the evidence showed the contrary, and the railroad company was compelled to fall back on the presumption that it had given a bond before entering upon the land; the point actually decided was that there was no such presumption, and we feel that had the Supreme Court considered it otherwise they would not have used such cautious language as in Zahn v. Pittsburg, etc., Ry. Co., 184 Pa. 66.

It is beyond dispute that a turnpike is a public highway, and travelers thereon have the same rights when using any other public highway. It cannot be closed against the public, and if for any cause the franchises of the company are forfeited, the road does not cease to be a public highway, but thenceforth it must be maintained in good order by the municipality in which it is located. The chief, if not the only, difference between a turnpike and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by public authority, but may be at the expense of individuals, the cost of construction and maintenance being reimbursed by a toll, levied by public authority for that purpose : McManus's Appeal, 5 Pa. Superior Ct. 65; Phila., etc., R. R. Co. v. Commonwealth, 104 Pa. 80. Any argument based on the constitutional provisions of 1874 or 1836 is inapplicable to a turnpike built in 1872: McClenachan v. Curwen, 6 Binney, 509 ; McManus's Appeal, supra. As a general rule the statute limiting the time for the commencement of real action operates in favor of every class and description of persons, natural and artificial : 1 Cyc. of Law, 1121 ; Miller v. Poor District, 17 Pa. Superior Ct. 159; Ash's Est., 202 Pa. 422. If statutes of limitations are statutes of repose where private interests are involved, there is greater reason for them to be such in cases where important interests affecting the community at large are directly affected : Elliott on Roads 2d ed., sec. 159.

The defendant company had full authority to enter upon the lands of the plaintiffs' ancestor in title and construct a turnpike thereon, and if that entry was made with the assent of Pulaski Carter, it was lawful, whether it was made under an oral arrangement without the payment of money, or for a valuable consideration, or under some license, indulgence or special contract, is not known; while the record is silent upon that subject, it is distinctly conceded that the original entry was made, and that the turnpike company entered and opened the highway when Pulaski Carter lived upon and tilled the land, hence, he must have known not only of the fact of the entry, and that the section of the highway through his farm was a necessary and constituent part of the defendant's property, as well as the purpose for which it was made, but that it was to be a permanent occupation of his land for a public use under authority of an act of assembly which provided a means for securing his compensation, as damages, if the entry upon his land was against his will. The situation remained unchanged until Pulaski Carter died in 1884, and the plaintiffs, as his heirs, succeeded to his title, encumbered with the roadway; but they did nothing until 1899. The authority of the defendant to purchase, take and hold lands in fee simple or for any less estate as shall be necessary to it in the prosecution of its works, is conferred by the same act of assembly, which provides for the assessment of damages to the owner of the land under condemnation proceedings. After the lapse of twenty-seven years of continuous possession and user of a public highway by a company authorized to purchase its right of way, such acquiescence by the landowner, after public rights have intervened, will prevent him from destroying the highway by wresting possession of a part of it from the company. His silence may not have been so dense as to prevent recovery of damages, but he has lost his right to the possession of the land. "As a general doctrine," says Angell in his treatise on limitations, "it has too long been established to be now in the least degree controverted, that what the law deems a perfect possession, if continued without interruption during the whole period which is described by the statute for the enforcement of the right of entry, is evidence of a fee. Independently of positive or statute law, the possession supposes an acquiescence by all persons claiming an adverse in-

terest; and upon this acquiescence is founded the presumption of the existence of some substantial reason (though perhaps not known) for which the claim of an adverse interest was foreborne. Not only every legal presumption, but every consideration of public policy, requires that this evidence of right should be taken to be of very strong, if not conclusive force : " Sharon v. Tucker, 144 U. S. 533 (12 Sup. Ct. Repr. 720).

It surely can make no difference whether the action is against many separate individuals, or against many who are united by an act of incorporation. The public sanction of their union does not render them objects of suspicion or exclude them from the benefit of the general rule of law : Forster v. Cumberland Valley R. R. Co., supra.

In Zahn v. Pitts., etc., Ry. Co., supra, after excluding from its decision the question whether an artificial person or creature of statute can acquire right of title to an easement except by entry made or authorized by statute, the Supreme Court definitely declared that, " when it has entered lawfully, it can define the extent of the lawful appropriation by marks on the ground, by maps and surveys filed of record, or by actual occupation of twenty-one years." In the present case there has been a conclusive determination of the extent of the appropriation, by the contemporary acts of the parties, and the continuous appropriation of all the ground. The right of the company began at the time of the original entry, and every reason urged in support of the statute of limitations, as statutes of repose, is emphasized by the facts of this case. The use of the land as a turnpike from 1872 to 1899, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant : Garrett v. Jackson, 20 Pa. 331. Through twenty-seven years no act was done or word spoken by the owner of the land in opposition to the occupation and use by the turnpike company, and such acquiescence in the use of a public highway passing through the farm occupied and tilled by the owner raises the presumption of an original grant.

The execution of a deed, says GIBSON, C. J., is presumed from possession in conformity to it for thirty years; and why the entire existence of a deed should not be presumed from acts of ownership for the same period which are equivalent to possession, it would not be easy to determine : Taylor v.

Dougherty, 1 W. & S. 324; Carter v. Tinicum Fishing Co., 77 Pa. 310.   While a mere possession is not sufficient to give title, the character of continued use, as found in this case, necessarily implies that it was adverse and hostile from the time of original entry.   A similar use of the land by township authorities would raise the presumption that it had been originally laid out by proper authorities, or that it had been dedicated by the owner: 9 Am. & Eng. Ency. of Law, 2d ed., 66.

The court erred in refusing the defendant's third and fourth requests.   The judgment is reversed, and judgment is now entered in favor of the defendant.