## Pratt *versus* Eby.

1. A title depending on the bar of the Statute of Limitations may be marketable, and a purchaser compelled to accept it if it clearly appear that the entry of the real owner is barred.

2. If the owner be under a disability when the adverse possession commenced, the Act of April 22d 1856 applies.

3. The exception in the Act of 1795 as to persons beyond seas, is repealed by Act of March 11th 1815.

4. Under an order of the Orphans' Court in partition, the estate of Graham was sold and the purchaser took possession in March 1840. A successor of the purchaser sold; the vendee declined to accept a conveyance alleging that the proceedings were defective; suit was commenced for the purchase-money September 1870. *Held,* thirty years having expired, that whether Graham's

[Pratt *v.* Eby.]

heirs were under disability or not, all right of entry in them was barred, unless there had been an entry followed by an ejectment or an action within that period.

5. By the order of the Orphans' Court to Ann Graham, the administratrix, two-thirds of the purchase were to be secured by mortgage. The return to the order was " the subscribers, attorneys in fact for Ann Graham, administratrix," &c., and was signed " Washington Ross, Mark A. Hodgson, attorneys, Ann Graham," and was confirmed. The deed was in the name of the administratrix by her attorneys (naming them) specially constituted, and signed by the attorneys only ; the mortgage was to them as attorneys of the administratrix. After her death one of the attorneys received the money and entered satisfaction of the mortgage. *Held*, that this would not be evidence of extinguishment of the mortgage.

6. No payment, demand, &c., had been made on the mortgage for more than twenty-one years. The Supreme Court was divided as to whether a mortgage is within the expression " *other charges*," in 7th section of Act of April 27th 1855, and this was held sufficient to render the title unmarketable.

7. It is a mistake to suppose that a doubtful title can be made marketable by an opinion of a court on a case stated between vendor and vendee.

8. In this case the heirs of Graham not being in court as parties to the action, their rights could not be concluded by any judgment in it.

January 20th 1871. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Chester county :* No. 257, to January Term 1871.

This was an amicable action of debt and case stated, in which Henry Eby was plaintiff and Joseph Pratt was defendant. It was commenced September 6th 1870.

The case exhibited the following facts :—

The Rev. Robert Graham, of Penn township, in said county, being seised in fee of two certain messuages and three lots or parcels of land adjoining each other, situate in said township of Penn, &c., and containing altogether 69 acres and 72 perches of land more or less, died intestate November 5th 1835, leaving a widow, Ann Graham, and children, to whom said real estate descended. After his death such proceedings in partition upon his said real estate were had in the Orphans' Court that, on May 6th 1839, said court ordered that said Ann Graham, one of the administrators of said deceased, having first filed a bond in the usual form, with Washington Ross and Mark A. Hodgson as sureties, should expose said premises to sale on October 19th 1839, upon the following terms and conditions: One-third of the purchase-money to be paid cash, one-third in one year, with interest, and the remaining third at the death of the widow of said deceased; these two latter payments to be secured by bond and mortgage upon the premises, in the usual form.

In pursuance thereof, said administratrix sold said real estate, on the day in said order mentioned, to Frederick Andress, for $3711. A return of said sale was made to said court, signed by Washington Ross and Mark A. Hodgson, as attorneys in fact of

·[Pratt *v.* Eby.]

·said administratrix, and also by the said Ann Graham, administratrix (which return was made a part of ·the case), the return was confirmed by said court, November 4th 1839. In pursuance of said sale a deed was made to the said ·Frederick Andress, on March 6th 1840, executed in the name of Ann Graham, administratrix of Rev. Robert Graham; deceased, by ·Washington Ross and Mark A. Hodgson, attorneys in fact, specially constituted, signed by them alone, the said Ann Graham not uniting with them (the deed was made part of the case). On the delivery of the deed, Andress paid one-third of said purchase-money in cash, and executed a mortgage upon the premises for the balance (being the money directed by the order of court aforesaid to be secured upon said premises), in which Ann Graham, administratrix of Rev. Robert Graham, by her attorneys in fact, Washington Ross and Mark A. Hodgson, specially constituted, are the mortgagees named, conditioned for the payment of $1237, with interest, on April 1st 1841, and also for the payment of $1237, upon the decease of said Ann Graham, the interest thereof to be paid to her during her life, which mortgage is recorded, &c. No power of attorney from Ann Graham to Washington Ross and Mark A. Hodgson is filed, or on record, or can be found, and no evidence of the same exists, except as is contained in the return to the order of sale, the deed and mortgage aforesaid. ·

Ann Graham, widow of the said Rev. Robert Graham, deceased, died March 26th 1840. Frederick Andress paid the whole of the moneys secured by said mortgage to Washington Ross, one of said mortgagees, who, on the 30th day of March 1842, entered satisfaction upon the records of said mortgage, and no payment, claim or demand on account of said mortgage, has since been made by any one. Andress, at the time of receiving said deed, entered into possession of said premises, and he and his grantees have held continuous, uninterrupted, hostile and notorious possession thereof ever since. ·

By virtue of divers mesne conveyances, the title of the said Frederick Andress to a portion of said premises, hereafter described, became vested in Henry Eby, Sr., to wit: To all that messuage and lot of ground, &c., containing one acre of land, more or less.

On October 28th 1869, the said Henry Eby, Sr., the plaintiff, sold the premises last described, to Joseph Pratt, the defendant, for $6000, according to conditions of sale and acknowledgment of purchase. Pursuant to said contract, the said Henry Eby, Sr., tendered a deed of conveyance in the ordinary form, for the said premises, purporting to convey a fee simple in the same, to the said Joseph Pratt, and demanded payment of the purchase-money, in accordance with the terms of said conditions of sale. The said Joseph Pratt declined to receive said deed, and to pay

[Pratt *v.* Eby.]

said purchase-moneys, on the ground that the plaintiff had no marketable title to the said premises, and could not convey an indefeasible fee simple title thereto.

The question for the opinion of the court, is whether, under the above circumstances, the plaintiff has an unencumbered marketable title to said premises.

"If the court shall be of opinion that the plaintiff has a marketable title to said premises, and can convey an indefeasible fee simple title thereto, the judgment to be entered for the plaintiff, the amount to be settled by the attorneys. If not, judgment to be entered for the defendant."

Return to order of sale in Rev. Robert Graham's estate :—

"To the Honorable the Judges within named.

"The subscribers, attorneys in fact for Ann Graham, administratrix of the estate of Rev. Robert Graham, deceased, within mentioned, do report, that, in pursuance of the within order of court, having given due public and timely notice of the time and place of sale, agreeably to the directions thereof, we did, on the 19th day of October, A. D. 1839, expose the lands and tenements therein mentioned to sale by public vendue or outcry, and sold the same, all together, to Frederick Andress, for the sum of three thousand seven hundred and eleven dollars, he being the highest and best bidder, and that the highest and best price bidden for the same, which sale we pray may be confirmed by the court.

"WASHINGTON ROSS,
"MARK A. HODGSON,
"Oct. 19th 1839.                              Attorneys.
"ANN GRAHAM.
"Nov. 4th 1839, read and confirmed nisi."

Deed :—

"This Indenture, made the 6th day of March, in the year of our Lord one thousand eight hundred and forty, between Ann Graham, of the township of Penn, in the county of Chester, state of Pennsylvania, widow, administratrix, &c., of Rev. Robert Graham, late of the same place, deceased, &c., by her attorneys, Washington Ross and Mark A. Hodgson, especially constituted of the one part, and Frederick Andress, of the township of West Bradford, in the county and state aforesaid, of the other part. Whereas, &c. (reciting Graham's title, his seisin at his death and the proceedings in the Orphans' Court). And whereas, the said Ann Graham, administratrix as aforesaid, by her letter of attorney, under her hand and seal duly executed, did nominate, depute and appoint the said Washington Ross, of, &c., and Mark A. Hodgson, of, &c., to be her lawful attorneys, giving and granting unto the said Washington Ross and Mark A. Hodgson full power and authority to sell the above-mentioned and described three tracts

[Pratt *v.* Eby.]

or parcels of land, and also to give good and sufficient discharges for all and every sum or sums of money which they, the said Washington Ross and Mark A. Hodgson, or either of them, shall receive, as and for the purchase-moneys of the aforesaid three tracts or parcels of land, and also to sign, seal and deliver and acknowledge all such deeds of conveyances as might be necessary for the absolute granting and assuring of the premises in fee simple, as in and by said letter of attorney, bearing date the nineteenth day of October, Anno Domini one thousand eight hundred and thirty-nine. In pursuance of which said order, the said Washington Ross and Mark A. Hodgson, attorneys aforesaid, after having given due public and timely notice, &c., sold the same to the said Frederick Andress for the sum of $3711, which sale, on report thereof made to the judges of said court, was, on the fourth day of November following, by them confirmed, &c. * * *

"Now, this Indenture witnesseth, that the said Ann Graham, by her attorneys, Washington Ross and Mark A. Hodgson as aforesaid specially constituted, for and in consideration of the sum of three thousand seven hundred and eleven dollars, &c., to them in hand paid by the said Frederick Andress at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, and thereof acquit and for ever discharge the said Frederick Andress, his heirs, executors and administrators, by these presents have and each of them hath granted, &c., and by these presents, in pursuance and by virtue of the said order of the court, do grant, &c., unto the said Frederick Andress, and to his heirs and assigns, all the above mentioned and described messuage or tenement, and three tracts of land, &c. * * *

"In witness whereof, the parties to these presents have interchangeably set their hands and seals the day and year above written.  [L.S.]  "WASHINGTON ROSS.
  [L.S.]  "MARK A. HODGSON,
"Sealed and delivered," &c.

Butler, P. J., delivered the opinion of the court, as follows: —

"We think the sale under the order of the Orphans' Court, and the acts of the parties in pursuance of it—the delivery of possession and payment of purchase-money—vested a complete title in Mr. Andress. The failure to execute a deed is not, we think, important.

"But in addition to this, the long, uninterrupted, hostile possession which the plaintiff and those under whom he claims have had of the land, confers a good title under the Statute of Limitations. More than thirty years have elapsed since they entered. That the possession was uninterrupted, notorious and hostile, is set out in the case stated. Since the Act of April 22d 1856 such possession for such a length of time bars everybody.

[Pratt v. Eby.]

" And we think the title is unencumbered—that the mortgage by Andress is satisfied. Independently of the entry on the record by one of the attorneys in fact named in it, the Act of 1855 requires that the mortgage shall be treated as extinguished, no money having been paid nor demand made on account of it for more than twenty-one years.

" A marketable title is one in which no actual doubt is involved: Dalzell v. Crawford, 1 Pars. Eq. Cases 37. And we believe the plaintiff, on the facts stated, has such a title."

Judgment was thereupon entered for the plaintiff, which the defendant assigned for error on the removal of the record to the Supreme Court.

*R. E. Monaghan* and *J. Smith Futhey*, for plaintiff in error.— The Acts of Assembly contemplate the making of a deed, conveying the title to the purchaser : Acts of 29th of March 1832, § 47, Pamph L. 204, Purd. 298, pl. 153 ; 9th of April 1849, § 4, Pamph. L. 525, Purd. 298, pl. 155.

There being no evidence of any authority in Washington Ross and Mark A. Hodgson to execute a deed, the case stands as if no such conveyance had been made. The title of the defendant in error, therefore, rests solely on the undisturbed possession of the premises, without any conveyance of the legal title to him.

The power of the attorneys in fact ceased with the death of the administratrix—for their power would die with her—they had no authority to receive the instalment of one-third, secured by the mortgage and payable in one year, the administratrix having died previously to its becoming due.

The widow's third could be satisfied only by the heirs: Act of 29th of March 1832, § 43, Pamph. L. 203, Purd. 297, pl. 152 ; Hise v. Geiger, 7 W. & S. 273.

*A. P. Reid*, for defendant in error.—A purchaser will not be permitted to object to a title on account of a bare possibility : Dalzell v. Crawford, 1 Pars. Eq. Cases 37 ; Sugden on Vendors 590. A deed was not necessary to vest a complete title in Mr. Andress: Beeson v. McNabb, 2 Watts 106 ; Backenstoss v. Stahler, 9 Casey 256. In sales by order of the Orphans' Court, the administrator is but the agent of the court : Sage v. Nock, 3 Am. Law Reg. 326 ; Miles v. Diven, 6 Watts 148 ; Myers v. Hodges, 2 Id. 381 ; Marshall v. Hoff, 1 Id. 440 ; Vandever v. Baker, 1 Harris 126. The fact that the attorneys gave no security, will not affect the title in the hands of the purchaser, who has complied with the terms of sale : Lockhart v. John, 7 Barr 137 ; Dixey v. Laning, 13 Wright 146. Andress and his grantees have held continuous, uninterrupted, exclusive, hostile and notorious possession thereof, ever since,—a period of over thirty years.

17 P. F. SMITH—26

[Pratt *v.* Eby.]

This gives complete title against every one : Watson *v.* Gregg, 10 Watts 289 ; Johnson *v.* Irwin, 3 S. & R. 291 ; Pederick *v.* Searle, 5 Id. 236 ; Acts of March 26th 1785, §§ 2, 4, 2 Sm. L. 299, Purd. 653, pl. 3, 5 ; April 22d 1856, § 1, Pamph. L. 532, Purd. 654, pl. 12 ; Weddle *v.* Robertson, 6 Watts 486 ; Shofer *v.* Dutton, 6 Phila. R. 185. Satisfaction by Ross, one of the mortgagees, who was recognised as the agent of the court, in making the sale, was but collateral to the order of the court : De Haven *v.* Bartholomew, 7 P. F. Smith 126. Hise *v.* Geiger, 7 W. & S. 273, is overruled by Unangst *v.* Kraemer, 8 W. & S. 391 ; Brooks *v.* Smyser, 12 Wright 89.

It is claimed that the charge in favor of the widow is a lien independently of the mortgage. The presumption from the lapse of time is that the whole money has been paid. Besides, no " payment, claim or demand on account" has ever been made by any one.

All rights, under either it or the mortgage, are therefore completely extinguished : Act of April 27th 1855, § 7, Pamph. L. 369, Purd. 654, pl. 11.

The opinion of the court was delivered, February 27th 1871, by

SHARSWOOD, J.—A title depending on the bar of the Statute of Limitation may be a marketable title which a purchaser will be compelled to accept, provided it clearly appears that the entry of the real owner or owners is barred : Shober *v.* Dutton, 6 Phila. Rep. 185. As where there is an owner in fee under no disability at the time the title accrues as against whom the statute begins to run and of course continues to run as against all his alienees, whether of particular estates or otherwise, and twenty-one years elapse without entry, or what is equivalent thereto, twenty-two years elapse without an action brought founded upon an entry within the twenty-one years. By the Act of April 13th 1859, § 1, Pamph. L. 603, "no entry upon lands shall arrest the running of the Statute of Limitations unless an action of ejectment be commenced therefor within one year thereafter." Even if the owner be tenant in tail, at the time of the decision, and the bar becomes complete as to him, no entry can be made " by any person claiming any estate, interest or right which such tenant in tail might lawfully have barred ; and whensoever the Statute of Limitations shall have begun or shall begin to run against the tenant in tail it shall continue to run against the issue, remainderman or reversioner, unless arrested by the act of the tenant in tail :" § 2 of the same act. If the owner, however, should be under a disability at the time the adverse possession commenced, then the Act of April 22d 1856, Pamph. L. 532, applies. The first section of that act provides " that no exception in any Act of Assembly respecting the limitation of actions in favor of persons *non compos mentis*, imprisoned, femes

covert or minors, shall extend so as to permit any person to maintain any action for the recovery of any lands or tenements after thirty years shall have elapsed since the right of entry thereto accrued, to any person within the exceptions aforesaid." The other exception in the Act of 1795, as to persons beyond seas, was repealed by Act of March 11th 1815, Pamph. L. 125. In addition to this there is the further security provided by the second section of the Act of April 22d 1856, Pamph. L. 532, by which it is enacted " that no purchaser or mortgagee shall be affected with notice of the pendency of any ejectment or action to recover real estate, or to compel a conveyance thereof, unless such action shall be indexed against the defendant and any terre-tenant made a party thereto in a book to be kept by the prothonotary, and called the eject-ment index, for which the plaintiff shall furnish the necessary information." Prior to 1856, the docket had to be searched to ascertain if there was any *lis pendens.* ·

The plaintiff below took adverse possession of the premises on March 1st 1840, at which time the right of entry, if the Orphans' Court sale was defective, was in the heirs-at-law of the Rev. Robert Graham in fee; and thirty years having expired, whether they were then under the disability or not, all right of entry in them, or any person claiming under them, is barred, unless there has been an entry followed by an action of ejectment, or an action within that period, of which the docket of the Court of Common Pleas, and perhaps of the Circuit Court of the United States, will furnish the necessary negative evidence. Thus qualified and fortified we would be disposed to hold such a title resting on ad-verse possession to be indubitable, and therefore marketable.

But that which we have found to be a more difficult question to answer in the affirmative is, whether this title is clear of all encumbrances. Andress, the purchaser at the Orphans' Court sale, paid one-third of the purchase-money in cash, and the balance was a charge upon the estate by the order of the court requiring the execution of a mortgage, and by the execution and recording of the same. According to the case stated, this mortgage was one " in which Ann Graham, administratrix of Rev. Robert Graham, by her attorneys in fact Washington Ross and Mark A. Hodgson, specially constituted, are the mortgagees named." We are not provided with a copy of the mortgage; but we must assume that it is truly described. Now it can hardly be pretended that the receipt of the money, and the entry of satisfaction by Washington Ross, after the death of Ann Graham, would be suffi-cient evidence of the extinguishment of the mortgage. But more than twenty-one years have run since the date of it, " and no payment, claim or demand on account of said mortgage has since been made by any one." It is contended that this presents a case within the 7th section of the Act of April 27th 1855, Pamph.

[Pratt *v.* Eby.]

L. 369, by which it is provided "that in all cases where no payment, claim or demand shall have been made on account of or for any ground-rent, annuity or other charge upon real estate for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises, subject to such ground-rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground-rent, annuity or charge shall thereafter be irrecoverable." Is this mortgage within the meaning of the word, "ground-rent, annuity or other charge upon real estate?" If it is, the title is unencumbered. If not, there is only the ordinary presumption of payment open to be rebutted, a risk which a purchaser cannot be required to assume. Upon this question it may be argued that "other charges upon real estate," means other charges *ejusdem generis* with ground-rent or annuity, a charge arising from deed or will. My opinion is that the act should have a liberal construction, and be held to apply to all kinds of charges upon real estate, to which the ordinary presumption of payment applied, making such presumption to be *juris et de jure.* Upon this question the members of this court are divided in opinion. That of itself is a sufficient reason for not forcing the title upon a purchaser. It is a great, though perhaps a common mistake, to suppose that a doubtful title can be made marketable by an opinion of a court on a case stated between vendor and vendee. We have not the heirs of the Rev. Robert Graham before us as parties in this action, and their rights cannot be concluded by any judgment we can give.

Judgment reversed, and now judgment for the defendant on the case stated.