# Covert *v.* Pittsburg & Western Railway Company, Appellant.

*Railroads—Title by adverse possession—Tacking—Eminent domain.*

Where a railroad company, having the right of eminent domain, takes land, not in the exercise of such right, but as a purchaser for railroad purposes, from one holding adverse possession, its title to the land will become good when the combined adverse possession of its vendor and itself comes to exceed twenty-one years.

Argued Oct. 22, 1902. Appeal, No. 49, Oct. T., 1902, by defendants, from judgment of Superior Ct., April T., 1900, No. 152, affirming judgment of C. P. Butler Co., March T., 1900, No. 144, on verdict for plaintiffs in case of Hezekiah Covert and L. M. Covert v. Pittsburg & Western Railway Company and Thomas M. King, Receiver. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Appeal from the Superior Court. See 18 Pa. Superior Ct. 541.

Ejectment for land in Jackson township.

At the trial in the court of common pleas the evidence tended to show that the land in dispute was a strip of land which the defendant claimed as a portion of its right of way under a deed from John Winter, and as to the land in controversy that John Winter was a mere intruder. The trial judge refused to instruct the jury that the railroad company could tack its possession to the possession of John Winter, and thus acquire a good title by twenty-one years' adverse possession. A verdict and judgment resulted for the plaintiff, and on appeal to the Superior Court the judgment was affirmed.

*Error assigned* was the judgment of the Superior Court.

*R. P. Scott,* for appellant.—The railroad company was entitled to tack its possession to that of its vendor: St. Louis, A. & T. H. R. R. Co. v. Nugent, 152 Ill. 119 (39 N. E. Repr. 263); James v. Indianapolis & St. Louis R. R. Co., 91 Ill. 554; Penna.

R. R. Co. v. Thompson, 45 N. J. Eq. 870 (19 Atl. Repr. 622);
Sherlock v. Louisville, etc., Ry. Co., 115 Ind. 22 (17 N. E.
Repr. 171); Am. Bank-Note Co. v. N. Y. Electric R. R. Co., 129
N. Y. 252 (29 N. E. Repr. 302); Wahl v. Pitts., etc., Ry. Co.,
158 Pa. 257; Hudson v. Watson, 11 Pa. Superior Ct. 266;
Zahn v. Pitts., ètc., Ry. Co., 184 Pa. 66.

*John H. Wilson*, with him *Lev. McQuistion* and *J. C. Vander-
lin*, for appellees.—The statute of limitations does not apply to
a railroad company invested with the right of taking private
property for public use : McClinton v. Pittsburg, etc., Ry. Co.,
66 Pa. 404; Philadelphia, Newtown & New York R. R. Co. v.
Cooper, 105 Pa. 239.

OPINION BY MR. JUSTICE BROWN, January 5, 1903 :

The single question raised here is, not whether a railroad
company, possessing the right of eminent domain, can acquire
title to land by twenty-one years' adverse possession of it,
but whether, as a purchaser of the same for railroad purposes
from one holding adverse possession, its title is good, if the com-
bined adverse possession of vendor and vendee exceeds twenty-
one years.

The appellant offered testimony tending to prove that John
Winter had been in adverse possession of the land in dispute
for several years prior to November 9, 1877, when he entered
into an agreement with the railroad company, whose successor
the appellant became, for the sale of it for railroad purposes.
The agreement was followed by a deed for the land on July 23,
1879. This suit was brought December 8, 1897, but the com-
mon pleas and Superior Court were both of opinion that the
railroad company could not avail itself of the act of limita-
tions of March 26, 1785, even if the combined adverse posses-
sion of Winter, its vendor, and itself had been of the character
required by the law, and had continued for more than twenty-
one years. The trial judge instructed the jury that " if John
Winter had occupied and had possession of this land for twelve
years and had sold to some person, not a corporation like a rail-
road company, and that person had held nine years longer, then
the title would have gone and the two possessions would have
come together, but our law does not give a railroad company

that right where it enters unlawfully, where it enters without authority of law." The Superior Court seems to have adopted the same view. In it we cannot concur.

The appellant is not claiming a right of way over the land and resisting payment of damages under the plea of the statute of limitations; it stands upon what it asserts is its title to the fee, acquired by purchase, just as a private person might have acquired the land. We need not consider the cases holding that a railroad company, possessing the right of eminent domain, cannot set up adverse possession for the statutory period, when the real owner of the land undertakes to assert his rights in it. The reason that adverse possession cannot be set up in such a case is, that the law presumes, when a railroad company takes land for its corporate purposes, it does so under its high right of eminent domain, and not as a wilful trespasser whose trespass may grow into a title. Its enjoyment of the ease-ment so acquired is upon the condition that proper compensa-tion to the landowner will be made whenever demanded. The law regards such occupancy of the land as by its permission, on the condition stated, and not as the act of a mere trespasser to whom statutes of limitations may give rights. The simple question now before us is, whether a railroad company may purchase land for railroad purposes from one whose inchoate title rests upon adverse possession.

If Winter had owned the land on a title by deed, it would not be contended that he could not have sold to the railroad company or that it could not have purchased from him; and it seems to be conceded that, if he had been in adverse possession for more than twenty-one years on November 9, 1877, or July 23, 1879, the railroad company would have taken a good title from him. It seems to be still further conceded—and if not, it is the law—that if an individual had purchased from Winter during his adverse possession of less than twenty-one years, he could afterwards count such possession as part of the twenty-one years upon which he could safely rely as his title against another having a better one, but lost by delay in assert-ing it. "I have no manner of doubt, that one who enters as a trespasser, clears land, builds a house and lives in it, acquires something which he may transfer to another; and if the pos-session of the two, added together, amounts to twenty-one years,

and was adverse to him who had the legal title, the act of limitations will be a bar to his recovery :" TILGHMAN, C. J., in Overfield v. Christie, 7 S. & R. 173. The purchaser from a trespasser may tack the latter's adverse possession to his own, so as to give title by the statute of limitations : Hughs v. Pickering, 14 Pa. 297. But the contention of the appellee is, that, though this is the law as to others, a railroad company cannot acquire any rights from a trespasser selling his inchoate title. Why not? The reason of the law in the case of a simple taking by a railroad company possessing the right of eminent domain does not exist when it becomes a purchaser, and cessante ratione legis, cessat lex.

What Winter sold to the railroad company was all he could convey in the land ; and, whether his title was good or bad, the law permitted him to transfer it : Overfield v. Christie, supra. If he could transfer it to an individual, why not to a corporation possessing the power to purchase? It is true that, when he sold, he conveyed simply a sprouting title, liable to be cut down by the holder of the better one, but just as certain not to be felled by the blow of any man, if allowed to spread its roots and fully mature after a growth of twenty-one years. Such was the title purchased by this appellant, and which it claims should now shelter it. The risk was assumed that this title might never become perfect, but the chances were also taken that, to the years of Winter's adverse possession of the land, the company might be able to add its own·uninterrupted ones, until twenty-one of them would stand in the way of any, save the commonwealth, who should attempt to enter upon the land. If the testimony offered by the defendant was to be credited by the jury, the railroad company's chances of ultimately acquiring a good title were successfully taken, and the fourth point submitted by it should have been affirmed.

The judgment of the Superior Court is reversed, as is that of the court below, and a venire facias de novo awarded, that, on another trial, the view herein expressed may be followed.