# Lehigh Valley Railroad Company, Appellant, *v.* Frank.

*Railroads—Real estate—Adverse possession—Title.*

1. Title to land purchased by a railroad company for railroad purposes, adjoining its right of way, but not actually occupied by its tracks, may be acquired by twenty-one years' adverse possession; and it is immaterial that the company may have intended to lay tracks on such land, if in fact such intention was never carried into practical effect.

2. The purchaser from a trespasser may tack the latter's adverse possession to his own so as to give title by the statute of limitations.

Argued March 2, 1909.   Appeal, No. 29, March T., 1909, by plaintiff, from judgment of C. P. Luzerne Co., May T., 1906, No. 18, on verdict for plaintiff in case of The Lehigh Valley Railroad Company v. William Frank.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Ejectment for land in the city of Wilkes-Barre.   Before FULLER, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[I repeat, if you find from this testimony that there was such a fence alongside of that property, with a house built as described, dating from a period before 1882, and continuing down to the inception of this suit, then you would be warranted in finding that the defendant had acquired title to that strip, by adverse possession, even although no portion of it was included in his paper title; unless—now we come to another question—prevented by another consideration, to which I will now call your attention, and I only call it to your attention for the purpose of instructing you to disregard it, because as I view it, it will have no bearing upon your duties.   I mention it because it is an important question of law which has been presented here, and upon which it is my duty to instruct you.

The plaintiff contends that even if defendant's adverse possession had been such as to give defendant title against the ordinary individual, it is nevertheless unavailing against a railroad corporation, as to land acquired by it for its railroad. It is correct to say, as an abstract proposition of law, that when land is acquired by a railroad corporation, either by purchase· or by condemnation, and is actually used for its railroad, no title can be gained to any portion of what is thus used, by adverse possession, however long it may be continued. That is a correct legal proposition in the abstract.   But I do

not believe that the proposition is applicable to the facts in evidence here. What are those facts? Why, simply first, a deed to the railroad corporation in 1870 for a certain lot of land, with nothing in the deed to denote the intended use of the land; next, a railroad, two main tracks and a switch built across a portion of the lot (I do not recall, however, any evidence in the case showing when these railroad tracks were built on the lot); next, the remainder of the lot, including the land in dispute, apparently severed in use from the railroad by a well-defined line, fenced above and below, and fenced for more than twenty years, at least, along the line of the portion in dispute and the portion disclaimed; next, the portion in dispute not only separated thus, but separated by a side fence, and built upon, and in the actual occupancy of the defendant and his predecessors; next, a corporate intention, if that has been established by competent evidence, some time, in some way, to use the land for railroad tracks. That is the sum total of the evidence on that proposition, and I say to you as a matter of law the railroad has not established its immunity from adverse possession under the legal principle which it invokes. I may be wrong about that, and if I am the error will be easily subject to correction.] [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was above instruction, quoting it.

*J. B. Woodward*, of *Wheaton, Darling & Woodward*, for appellant.—A railroad is a public highway, and the land which it covers whether acquired by the exercise of eminent domain or by purchase is not the subject of adverse possession, and is immune from the statute: Reading Co. v. Seip, 30 Pa. Superior Ct. 330.

When a railroad company condemns land it is of necessity the judge of how much is required for its use. If this question were submitted to a jury in every case, the right of eminent domain would be of little practical value. The company had a right, when it condemned the property, to regard and make provision for its future, as well as its present needs: Pittsburg,

Ft. W. & C. Ry. Co. v. Peet, 152 Pa. 488; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511.

The nonuser of a portion for present purposes cannot be held to be an abandonment: Hummel v. Cumberland Valley R. R. Co., 175 Pa. 537.

*S. J. Strauss,* for appellee.—The act of the railroad company in fencing this land out of its right of way is conclusive upon the company.

OPINION BY BEAVER, J., July 14, 1909:

The plaintiff sought to recover from the defendant in ejectment a lot of ground fronting on William street in the city of Wilkes-Barre measuring as, the description was amended on the trial, thirty-one and seven tenths feet and running between parrallel lines northwardly to a diagonal line indicated by a fence bounding the plaintiff's right of way, as used. The defendant disclaimed title for all of said lot, except a strip about six feet in width, upon a portion of which his house was erected, the balance being enclosed by a fence which had been erected by his predecessors in title in or about the year 1868. Plaintiff claimed the land in dispute as part of Lot No. 27 in a plot made by one William Wood, who was the common source of title of both plaintiff and defendant. The defendant claimed for a portion of the strip in dispute as part of Lot No. 28, and for the balance by virtue of adverse possession for more than twenty-one years. The verdict of the jury, under certain questions of fact, submitted to them, the manner of submission not complained of, determined the title to be in the defendant as a part of Lot No. 28, and about three feet as belonging to the plaintiff under his claim of adverse possession. The plaintiff denies the efficacy of the claim of adverse possession which is raised under the charge of the court, as assigned for error, which explains itself and is as follows:

"I repeat, if you find from this testimony that there was such a fence alongside of that property, with a house built as described, dating from a period before 1882, and continuing down to the inception of this suit, then you would be warranted

in finding that the defendant had acquired title to that strip by adverse possession, even although no portion of it was included in his paper title; unless—now we come to another question—prevented by another consideration, to which I will now call your attention, and I only call it to your attention for the purpose of instructing you to disregard it, because as I view it, it will have no bearing upon your duties. I mention it because it is an important question of law which has been presented here, and upon which it is my duty to instruct you.

"The plaintiff contends that even if defendant's adverse possession had been such as to give defendant title against the ordinary individual, it is nevertheless unavailing against a railroad corporation, as to land acquired by it for its railroad. It is correct to say, as an abstract proposition of law, that when land is acquired by a railroad corporation, either by purchase or by condemnation, and is actually used for its railroad, no title can be gained to any portion of what is thus used, by adverse possession, however long it may be continued. That is a correct legal proposition in the abstract. But I do not believe that the proposition is applicable to the facts in evidence here. What are those facts? Why, simply first, a deed to the railroad corporation in 1870 for a certain lot of land, with nothing in the deed to denote the intended use of the land; next, a railroad, two main tracks and a switch built across a portion of the lot (I do not recall, however, any evidence in the case showing when these railroad tracks were built on the lot); next, the remainder of the lot, including the land in dispute, apparently severed in use from the railroad by a well defined line, fenced above and below, and fenced for more than twenty years, at least, along the line of the portion in dispute and the portion disclaimed; next, the portion in dispute not only separated thus, but separated by a side fence, and built upon, and in the actual occupancy of the defendant and his predecessors; next, a corporate intention, if that has been established by competent evidence, some time, in some way, to use the land for railroad tracks. That is the sum total of the evidence on that proposition, and I say to you as a matter of law the railroad has not established its immunity from adverse possession under

the legal principle which it invokes. I may be wrong about that, and if I am the error will be easily subject to correction."

The question is succinctly stated in the appellant's statement of the question involved, "Can title to land purchased by a railroad company for railroad purposes, adjoining its right of way, but not actually occupied by tracks, be acquired by twenty-one years' adverse possession?"

The appellant acquired its title in 1870. At that time the defendant's predecessor in title clearly indicated the possession of the strip in dispute by a fence, which was notice to all the world of the claim thereto. The owner at that time, therefore, had a sprouting title which required only time to mature. The defendant purchased this sprouting title. It could have been cut down at the time of its purchase by the plaintiff who was then, at least apparently, the owner of a better title.

There is no denial here of the general principle stated in Overfield v. Christie, 7 S. & R. 173, and in Hughs v. Pickering, 14 Pa. 297, that the purchaser from a trespasser may tack the latter's adverse possession to his own, so as to give title by the statute of limitations. It is claimed, however, that the rule does not apply in this case, because the plaintiff purchased Lot No. 27, with the intention of expanding its right of way and of laying tracks upon it, or at least upon a portion of it, and in support of this contention, Reading Co. v. Seip, 30 Pa. Superior Ct. 330, is cited. The question decided in that case, however, is entirely different from the one which is presented by the facts here. The question there was whether or not an individual could acquire title by adverse possession to land purchased and used by a railroad company for the construction of switches adjacent to, and diverging from, its main track, the switches having been erected or built prior to the inception of the defendant's title. Here, however, the facts are directly the reverse. The defendant had his flag of defiance up, as evidenced by his possession and his intention to defend it, manifested by a fence indicating his boundary, at the time at which the railroad purchased. The land which it purchased had not been dedicated in any way to public use and there was, therefore, no invasion by the defendant of any rights

which the public had or of any use which the plaintiff had actually made for the purpose of discharging its duty to the public. If there had been intention at the time to make such use of the land purchased by it, it could have recovered from the defendant or his predecessor in title, because the sprouting title had not then matured, for, as was said in Covert v. Railway Co., 204 Pa. 341, when the defendant purchased from his predecessor, he received "simply a sprouting title, liable to be cut down by the holder of the better one, but just as certain not to be felled by the blow of any man, if allowed to spread its roots and fully mature after a growth of twenty-one years." Whatever may have been the intention of the plaintiff company, prior to or at the time this suit was brought, its conduct does not indicate the use now claimed, for not only the strip of three feet in dispute but the entire balance of the piece for which ejectment was brought and to which the defendant disclaimed title was fenced out from its right of way, and it seems to be conceded by the plaintiff in his history of the case that "the defendant disclaimed title to all of the portion fenced, except a strip six feet front on William Street, and running back to the railroad's right of way," which is indicated on the drafts of both plaintiff and defendant by a fence.

In Plymouth Railroad Co. v. Colwell et al., 39 Pa. 337, there is a clear recognition of what we regard as a well-settled principle in Pennsylvania that lands purchased by a railroad company beyond what are actually dedicated to corporate purposes are subject to all the rules and limitations which prevail as between private owners.

In Penna. R. R. Co. v. Freeport, 138 Pa. 91, quotation is made by the judge of the court below from the answer of Judge STERRETT to points presented in the case of Penna. R. R. Co. v. Gray in the common pleas of Westmoreland county, in which it is said: "The charter makes the road a public highway, and we are satisfied that the statute of limitations will not run against the plaintiff's right of way, and, as a matter of law, we so instruct you." In the case under consideration, however, there is no claim that the land claimed by the defendant under title by adverse possession interfered in any way with

the plaintiff's original right of way. The most that is claimed is that the land was purchased with the intention of extending the plaintiff's tracks, so as to make it a part of its railroad for traffic or public use. There was no evidence, however, so far as we can ascertain, which in any way indicates a dedication of the strip claimed by, and awarded to, the defendant under his claim of title by adverse possession. Items of evidence which indicate quite the reverse are clearly pointed out by the trial judge in the court below in the part of the charge to which exception is taken and here assigned for error.

The motion for judgment, non obstante veredicto, is based upon the same grounds as those to which exception is taken in the charge of the court assigned for error, and for the same reason we think the motion was properly denied.

The case below was well tried, the charge of the trial judge is admirably clear, complete and satisfactory, and we see no reason to disturb the judgment based upon the intelligent verdict which was rendered in the case.

Judgment affirmed.