## Wyalusing Township School District v. Babcock et al.

*John C. Ingham,* for plaintiff; *W. M. Rosenfield,* for defendants.

CULVER, P. J., April 2, 1928.—This equitable proceeding is to restrain the defendants from entering upon a certain school property known as the "Lyon School," in the School District of Wyalusing Township, and from doing any damage thereto, or removing any materials taken out of or from said buildings, and from in any manner interfering with plaintiff's occupancy and use of the said buildings, and from such further relief in the premises as the court shall find to be proper and necessary to preserve the rights of the plaintiff.

An answer was filed by defendants after the plaintiff and defendants agreed upon the facts in order that there might be no dispute as to any material fact for the determination of the case. These facts, briefly stated, are as follows:

"1. That the School District of the Township of Wyalusing, the plaintiff, is a legally-constituted school district of the Commonwealth of Pennsylvania created and existing under the laws of said State, and situate in the Township of Wyalusing, County of Bradford, and State of Pennsylvania.

"2. That the said school district, the plaintiff herein, succeeded to the title and all the rights in and to the property of a former school district created by the said State under the same name and at the same place as a part of the common school system of the said State, and which said former school district had been in existence for upwards of seventy-five years.

"3. That upwards of seventy-five years ago the said former school district acquired land in what was known as the Lyon Sub-District in said township and built thereon a school-house and outbuildings and used the same for the school purposes of the said school district, and so used the same continuously, exclusively and adversely until the creation as aforesaid of the plaintiff school district.

"4. That the plaintiff herein, from the time of its creation as aforesaid, has used said land for the purposes of the said school district, at first by continuing and maintaining a regular school at said place and later by transporting the school children of said sub-school district to other schools and using this land as a waiting-station for such school children to take the transporting vehicle."

That the said school was not used for school purposes during the school year 1923-1924 and has not been used as such since then, except that the coal-house has been fitted up as a waiting-room for students being transported by said School District of Wyalusing Township. That on May 16, 1924, the plaintiff school district legally adopted the following resolution: "Moved by Brown, seconded by Tyler, that the Lyons and Browntown Schools be permanently closed."

"5. That the plaintiff and its predecessor have been in the continuous, exclusive and adverse possession of the said land for upwards of seventy-five years last past.

"*But for school purposes only.*

"6. That the above-named defendant, Clinton Johnson, without any authority from the plaintiff, has gone upon the said premises and commenced tearing down the school-house on the said land, has torn up the floor and done other damages to the said building and threatens to tear down the whole building and take away the material."

And it is further admitted by the parties that part of the floor of said school-house and the two outside toilets have been taken away by other persons by permission of the plaintiff.

"7. That the said Clinton Johnson claims to have purchased the said building from the said A. M. Babcock. The said A. M. Babcock claims to have sold the said building to the said Clinton Johnson, and encourages him in said demolition and has agreed to indemnify him against action for damage for so doing.

"8. That the said school lot is included within the line describing the farm of Mary and A. M. Babcock, as referred to and within the lines of the deeds of their predecessors in title from 1847 to the present date.

"9. That the school-house in question was a one-room school-house, and since the closing thereof, the pupils have been transported to a two-room school-house in Tuscarora Township."

With these facts agreed upon, we are called upon to determine whether or not the plaintiff is entitled to the relief sought. We will first set forth the legal position contended for by defendants as justification for their acts and conduct. Defendants contend that all rights of the plaintiff in the school property in question have terminated and ended, and that because the school lot is surrounded by the farm of the defendants, Mary Babcock and A. M. Babcock, and has been so surrounded, as shown by the record titles agreed upon, since 1847, the lot and the buildings in question have reverted to the present owners of the property, Mary Babcock and A. M. Babcock, two of the defendants above named, and argue, in support of this contention, that the school district, by the resolution mentioned, has permanently closed the school and transported the pupils to a school in the School District of Tuscarora Township. Defendants further contend that these facts amount to a consolidation of the Lyon School in Wyalusing Township School District with the school in Tuscarora School District within the meaning of section 3701 of the School Code, which reads as follows: "That whenever graded schools can be made to accommodate the pupils of one or more ungraded schools, by con-

solidating said ungraded school or schools with another school, either graded or ungraded, it shall be the duty of the board of school directors to abandon the one-room school or schools, and, instead of repairing or rebuilding the one-room school-house or school-houses, they shall erect a suitable modern building for the purpose of consolidating and properly grading all of the said schools;" and, therefore, amount to *abandonment* of the school premises in question.

The second contention made by defendants is as follows: They claim that a school district could hold land, either by possessing the title or by condemning the same, the same as could a railroad company. In other words, that a school district can obtain title by agreement or by the right of eminent domain or by adverse possession. With this contention there is no dispute, but they further contend: "There is a presumption that any such corporation that takes land for its corporate possession does so under its high right of eminent domain and not as a wilful trespasser whose trespass may grow into a title." Citing Covert *v.* Pittsburgh Ry. Co., 204 Pa. 341, and other cases in support thereof.

Basing their argument upon this contention, they further claim that, previous to the School Code of 1911, when land was condemned for school purposes, the title acquired was not an estate in fee simple, but simply a right to use and occupy the land for school purposes, and when this use and occupancy ceased, the title automatically reverted to the original owner or those holding under him, upon the assumption that when land was so taken by the right of eminent domain for school purposes, the damages assessed by viewers and paid by a school district were based, not on the valuation of the absolute fee in the land but on the right to use and occupy it for school purposes, alleging that the rights acquired by a school district in such condemnation proceedings were in the nature of an easement or a license, which terminated whenever it ceased to be used for such purposes, and, therefore, it must be presumed plaintiff's title was acquired by right of eminent domain and terminated when the property ceased to be used for school purposes. We believe, under the law, these contentions of defendants cannot be sustained. As to the first, we are not convinced the plaintiff school district has ever, by its action, "abandoned" the school property. Nor has there been a "consolidation" of the Lyon School with any other school.

Section 3702 of the School Code declares the definition of a "consolidated school" to be "a school formed by uniting two or more elementary schools or two or more public elementary schools with the grades of other public schools which, prior to such union, were maintained in separate buildings, and, after such union, are maintained in one school organization taught by two or more teachers."

And, again, the same section further defines a "joint consolidated school" as "a consolidated school organized, maintained and controlled by the joint action of two or more school districts."

The facts agreed upon do not show that the Lyon School has ever become part of a consolidated school or a joint consolidated school. The facts agreed upon do show that the scholars from the Lyon School are being transported to a two-room school in the Tuscarora Township School District, but there is no agreement that the Wyalusing School District has anything to do with, or any control over, the Tuscarora School District schools, and, as a matter of fact, it is not, because it was conceded at the argument by counsel for defendants that the scholars being transported from the Lyon School to the Tuscarora School District are being there schooled by some arrangement

between the two school districts, and the Wyalusing School District is paying their tuition to the Tuscarora School District. We think it cannot, therefore, be held that this school has been consolidated with any other school, and certainly there is no joint consolidated school, so as to make it the duty of the Wyalusing School District to abandon the school property in question, as provided in the above-mentioned section 3701 of the School Code. Moreover, if defendants' contention in this regard is valid, we think a serious question would arise as to the constitutionality of that part of the School Code which requires school districts, under certain conditions, to consolidate and, under other conditions, over which the school board has no control, to close certain schools, as, for instance, under section 1406 of the School Code: "Whenever the average attendance of pupils regularly enrolled at any one-room school in any school district of the fourth class is ten or less than ten, the Board of Directors shall close such school."

If, under certain conditions, over which the school district has no control, it is obliged to close certain one-room schools and consolidate them with other districts, and if such action automatically amounts to an abandonment of their school property, is it not taking their school property from them without compensation? It is not necessary to decide this question in this case, but it is well worth careful consideration should the case arise where the question must be decided.

We are not satisfied that the resolution of the Wyalusing Township School District hereinbefore mentioned, as follows: "Moved by Brown, seconded by Tyler, that the Lyons and Browntown Schools be permanently closed," is an abandonment of this school property. We are satisfied that, notwithstanding this resolution, this school board or any subsequent school board of this district might by proper action reopen or re-establish the school. In other words, the said resolution of the school board is of a legislative or governmental character and is not binding on subsequent boards if, in the judgment of a subsequent board, conditions had so changed as to make it advisable to reopen the school, such board might revoke the above resolution. "One school board cannot bind or exercise power and discretion over subsequent boards:" Unity Township School District v. Hempfield Township District, 7 Westmoreland L. J. 138; McCormick v. Hanover Township, 246 Pa. 169; Moore v. Luzerne County, 262 Pa. 216.

The School Code recognizes a clear distinction between closing a school and abandoning school property, as section 603 thereof provides: "No property that has heretofore been acquired by, conveyed or granted to, any school district in this Commonwealth for school purposes, or which may hereafter be acquired by any school district for school purposes, shall be considered as abandoned until the board of school directors of such districts shall pass, by a vote of the majority of the members of the board, a resolution declaring it to be the intention of such district to vacate and abandon the same, whereupon all right, title and interest of such district in such premises shall be fully terminated."

We are, therefore, of opinion that the facts agreed upon do not show an abandonment of this school property by the plaintiff, and this is our conclusion, irrespective of the further agreed fact that the plaintiff, since closing the Lyon School, has used, and is still using, the school lot and one of the buildings thereon as a waiting-station for the purpils who are being transported to the school in Tuscarora Township School District, and when we consider this fact, we feel confident that defendants' contention that this school property has been abandoned cannot be sustained. The other con-

tention of the defendants that it must be presumed plaintiff's title to the property in question was acquired by eminent domain and not by express grant or adverse possession and user certainly cannot be maintained if we are correct in our understanding of the law that the first act of assembly in Pennsylvania authorizing the acquisition of property for school purposes by eminent domain was enacted April 9, 1867, P. L. 51, and this is the first legislation in this State we find giving any right of the power of eminent domain to a school district. If the school district possessed no power more than seventy-five years ago, when it acquired this property and took possession, to acquire it by right of eminent domain, there surely can be no presumption that it did so acquire it. It, therefore, seems to us an established fact that the land in question was not acquired under condemnation proceedings. If this be correct, then it must have been acquired either by a grant or by the adverse possession, which it is admitted plaintiff had of this particular lot.

"A school district is a quasi-corporation or municipality," is held in Com. v. Wilkins, 75 Pa. Superior Ct. 305; Lyon v. Strock, 274 Pa. 541; Dover School District v. Lauer, 22 Dist. R. 102.

It is laid down in 2 Corpus Juris, 228, "A municipal corporation may acquire title to land by adverse possession for corporate purposes, and even for other than corporate purposes."

That a school district, as a municipal corporation, may acquire title to land by adverse possession is held in Dover School District v. Lauer, 22 Dist. R. 102, and also in Lee v. County School Board, 132 S. E. Repr. (W. Va.) 863.

The acquisition of title by the plaintiff school district to the lot in question, whatever the method, was so long ago that it is now impossible to ascertain its method. The only fact we can definitely determine is that it did not asquire the land by right of eminent domain, and the fact that it acquired this land long before the legislature vested in school districts the power of eminent domain, and without evidence to explain how its long, continuous, open and notorious possession was acquired, [shows that] it must be presumed to be in pursuance of a full and unqualified grant: Garrett v. Jackson, 20 Pa. 331; Carter v. Ridge Turnpike Co., 22 Pa. Superior Ct. 162.

A brief history of the law governing these questions is found in Dover School District v. Lauer, 22 Dist. R. 102, which is a case very similar to the one at bar. In that case, Judge Ross (page 103) said:

"Under those facts, it will be observed that the land in question has been used for the same purposes continuously since 1834, and that use has been an 'open and notorious one to the entire exclusion of all other purposes.'

"As early as the Act of Assembly of June 13, 1836, § 14, P. L. 525, a board of school directors could, at its discretion, acquire and hold or dispose of real estate for school purposes: McCullough v. School Directors, 11 Pa. 476; and the Act of May 8, 1854, § 18, P. L. 617, expressly gave school districts the right to purchase and sell real estate for their purposes.

"It has been ruled by the Supreme Court in Com. v. Morrisey, 86 Pa. 416; Philadelphia v. Fox, 64 Pa. 169; Darby v. Sharon Hill, 112 Pa. 66, and Com. v. Moir, 199 Pa. 534, that a school district is 'a municipality of specific statutory creation.' It is a well established principle of law that a municipal corporation and even a private corporation may acquire title to land by adverse possession: 2 Abbott on Municipal Corporations, § 739.

"It is true that there is no evidence to show that the plaintiff ever paid for the land or entered security therefor, or to show by what proceedings or under what circumstances it entered· into possession of the land, but it is plain that

it did not take said land by condemnation proceedings, for the act of assembly giving school districts this right was not passed until the year 1867, long after its possession and use of the land for its purposes, and the very use of the land continuously, openly and notoriously, without evidence to explain how it began, is presumed to be in pursuance of a full and unqualified grant: Garrett v. Jackson, 20 Pa. 331; Carter v. Ridge Turnpike Co., 22 Pa. Superior Ct. 162; so that the possession adversely of the land in question by the plaintiff for so long a period being established by the facts, the law presumes that the entry was of right, and that the evidence of title has been lost. It has been held that such title is marketable: Pratt v. Eby, 67 Pa. 396.

"Mr. Justice Lewis, in Heckerman v. Hummel, 19 Pa. 64, treats of this law as follows: 'After the lapse of three score years and ten, the memory fails, witnesses die and documents are lost or mislaid. It is, therefore, difficult and frequently impossible to establish by positive evidence the facts of an ancient transaction. The law, in furtherance of justice, and for the protection of society, has, in such cases, substituted for positive evidence the doctrine of presumptions. A possession of twenty-one years is not only a sufficient defense to an ejectment, but is a title on which a plaintiff may support such an action against another.'

"Thus, as 'the scythe of time destroys the evidence of title, the hour-glass measures out the period when those evidences are no longer necessary.' "

Defendants raise the further contention that as one of the facts agreed upon in this case is "that the plaintiff and its predecessors have been in the continuous, exclusive and adverse possession of the said lands for upwards of seventy-five years last past for school purposes only," [that fact] necessarily shows that plaintiff has not acquired fee simple title to the land. We think this contention is not well founded. There is a difference in the quality of the estate acquired by a grant for so long a period, or such time only as the property shall be used for a specific purpose, and an absolute grant limiting the purposes for which the property may be used.

*"Qualification for school purposes only."*

The facts agreed upon show that it was held for a lawful purpose; that is, a purpose for which the school district had authority to acquire and hold land, but, in our opinion, that does not change the character of the title acquired by the school district.

"Where the owner of 176 acres of land conveys, by deed to the directors of a school district and their successors, one-half acre of the same 'for school purposes only,' without any condition, restraint upon alienation, or clause of forfeiture, the school district takes an estate in fee simple in the one-half acre, including the oil and gas therein, under power granted by the Act of May 8, 1854, P. L. 617, the quoted words being surplusage:" Philips Gas and Oil Co. v. Lingenfelter, 262 Pa. 500; Sapper v. Mathers, 286 Pa. 364.

In Carter v. Ridge Turnpike Co., 22 Pa. Superior Ct. 162, Judge Rice, on page 168, quotes with approval from Hudson v. Watson, 11 Pa. Superior Ct. 266, the following: "When one uses an easement whenever he sees fit and without direct leave and without objection, it is adverse; uninterrupted adverse enjoyment for twenty-one years is a title which cannot afterwards be successfully disputed. Such enjoyment without evidence to explain how it began is presumed to have been in pursuance of a full and unqualified grant. The owner of the land has the burden of proof that the use of the easement was under some license, indulgence or special contract inconsistent with a claim of right by the other party."

We are, therefore, convinced that the plaintiff in this case must be pre-

sumed to have acquired title in fee simple to the lands in question in pursuance to a full and unqualified grant.

"So that the possession adversely of the land in question by the plaintiff for so long a period being established by the facts, the law presumes that the entry was right, and that the evidence of title has been lost:" Pratt *v.* Eby, 67 Pa. 396.

That a fee simple title in the lands in question for school purposes could be acquired seventy-five years or more ago is provided by the original Common School Act of this State, passed April 1, 1834, P. L. 170; section 237 provides: "The supervisors of every township, and the town council of every borough forming a school district, shall have power to purchase, hold and receive real and personal property of all descriptions that may be necessary for the establishment and support of schools, and the same to sell, alien and dispose of whenever it shall be no longer required for the uses aforesaid."

This act was followed by the Act of June 13, 1836, P. L. 525, enlarging powers of school districts; and the Act of April 7, 1849, § 16, P. L. 441, provides that boards of directors "shall cause suitable lots of ground to be purchased or rented and suitable buildings to be erected, purchased or rented for school-houses, and shall supply the same, etc.," and the Act of May 8, 1854, P. L. 620, in force at the adoption of the School Code of 1911, provides, in section 18, that the school directors shall have capacity as bodies corporate "to purchase and hold such real and personal property as may be necessary for the establishment and support of the schools, and the same to sell, alien and dispose of when it shall no longer be necessary for the purposes aforesaid, and, also, whenever the board of directors or controllers, in cases where school property has been conveyed to them, shall deem it expedient to make sale of the said real estate for the purpose of reinvesting the proceeds therof for school purposes, etc.," and the School Code of 1911 gives school districts very full and complete power for purchasing and acquiring in other ways real estate for school purposes and for selling and disposing of the same, and section 607 provides: "The title to all real estate acquired by any school district in this Commonwealth by condemnation proceedings, as hereinafter provided for, shall be vested in such school district in fee simple."

We are of opinion that, even though the legislature granted power to school districts to take land by eminent domain in 1867, and before the plaintiff in this case had been in adverse possession for twenty-one years, it would not in any wise affect plaintiff's right by such continued possession to acquire a fee simple title.

"Where a railroad company having a right of eminent domain takes land, not in the exercise of such right, but as a purchaser for railroad purposes, from one holding adverse possession, its title to the land will become good when the combined adverse possession of its vendor and itself comes to exceed twenty-one years:" Covert *v.* Pittsburgh & Western R. R. Co., 204 Pa. 341.

Plaintiff's counsel in his brief has well stated this conclusion as follows: "The logical sequence of this principle is that it depends upon the character of the commencement of the title. In the above case, the individual who sold to the railroad had certain rights under his possession, that is, inchoate rights that would come to actuality after twenty-one years. The railroad by its purchase acquired those rights, and such rights thus acquired were not affected by the circumstance that the railroad had the right of eminent domain. Applying the same principle to the present case, whether the origin of the plaintiff's title was by grant or by adverse possession, such origin was long prior to the Act of 1867, and that act could in no manner derogate from

the title or take away any of the rights, whether matured or inchoate, that it then had. If only inchoate, they would continue to progress to maturity just the same as in the case of the railroad above cited."

Plaintiff's counsel further contends that, even though plaintiff had but a conditional fee which would fail on ceasing to use the land for school purposes, the title to the building would be personalty and still belong to the school district: Young v. Oviatt, 35 Pa. Superior Ct. 603.

As we view this case, it is not necessary to pass upon this question.

We are of opinion that the plaintiff by its long adverse user and possession must be presumed to have acquired by a full grant a fee simple estate in the lot in question, and that, independent of the fact that it still is using the said lot as a waiting-station for scholars in transportation, it still possesses in the fullest extent the title thus acquired; that it has taken no action which can be interpreted an abandonment of its property and that it is entitled to the relief sought in this bill.

### Decree.

And now, April 2, 1928, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the defendants, Mary Babcock, A. M. Babcock and Clinton Johnson, and each one of them jointly and severally, are hereby restrained from in any way interfering with the plaintiff's occupancy and use of the lot of land and school buildings thereon described in plaintiff's bill.

2. That the defendants, Mary Babcock, A. M. Babcock and Clinton Johnson, shall pay the costs in this equitable proceeding.

Upon filing this decree, the prothonotary is directed to notify counsel for defendants in accordance with Equity Rule No. 77, and if no exceptions be filed within ten days therefrom, this decree shall become final.

From Rodney A. Mercur, Towanda, Pa.