# Commonwealth *v.* Wilkins, Thomas & Barney, Appellants.

*Interpretation of statutes — Municipalities — Vaccination of school children—Act of June 18, 1895, P. L. 203.*

The Act of June 18, 1895, P. L. 203, is not a penal statute and is not to be construed or administered by the rigid technical rules applicable to penal laws, but fairly according to its intent, neither narrowing it to the exclusion of cases clearly within such intent or stretching it beyond its legitimate scope to cover matters not clearly meant to be included.

A school district is a quasi corporation for the sole purpose of administering the Commonwealth's system of public schools, and vitally associated with the education of the children in protecting their health, so that it is reasonably embraced within the designation of "municipality."

As such, it is comprehended within the provisions of the title of the Act of 1895, requiring compulsory vaccination for the public health in the "several municipalities" of the Commonwealth.

Argued October 5, 1920. Appeal, No. 29, April T., 1921, by W. T. Wilkins, from judgment of the Court of Q. S., Erie County, November Sessions, 1919, No. 89, on verdict of guilty in the case of Commonwealth of Pennsylvania *v.* W. T. Wilkins, Burt Thomas, and J. Ross

Barney. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Summary conviction for violation of the Act of June 18, 1895, P. L. 204, as amended by Act of June 5, 1919, P. L. 399. Before HIRT, J.

The facts are stated in the following opinion of the court below affirming judgment of justice of the peace:

The defendants, J. Ross Barney, M. T. Wilkins, and Burton Thomas with J. W. Hughes and George Sims, being all of the members of the school board of Millcreek Township, were summarily convicted for a violation of the Act of June 18, 1895, P. L. 204, as amended by the Act of June 5, 1919, P. L. 399, and a fine of $25 was imposed on each of them. J. Ross Barney, M. T. Wilkins and Burton Thomas appealed, and on hearing, admitted the statement of facts in the transcript of the justice of the peace. The record returned shows the following material facts:

That since the first day of December, 1919, the above school directors, being in charge of and having supervision of all the public schools in the township of Millcreek, have permitted James Berry and other children to attend the public schools in said school district "without said children having first been vaccinated or without having presented a certificate signed by a physician setting forth that such child or children has or have been vaccinated and that a subsequent examination reveals a resulting cicatrix, or that vaccination has been performed according to the rules and regulations promulgated by the commissioner of health with the sanction and advice of the advisory board of the department of health, or that said child or children has or have previously had smallpox," contrary to the form of the acts of assembly in such case made and provided. This question embodies the essentials of section 12 of the Act of June 18, 1895, as amended by the Act of June 5, 1919,

imposing a duty on school directors and others to ex-
clude unvaccinated children from the schools.

Section 21 imposes a penalty for violation as follows:

"Any person or persons named in this act, who shall
fail, neglect, or refuse to comply with, or who shall
violate, any of the provisions or requirements of this act,
shall, for every such offense, upon conviction thereof be-
fore any mayor, burgess, alderman, police magistrate, or
justice of the peace, be liable to a fine or penalty therefor
of not less than five dollars nor more than one hundred
dollars; which said fines or penalties shall be paid into
the school fund of the municipality in which the offense
was committed; and in default of payment thereof, such
person or persons, so convicted, shall undergo an im-
prisonment in the jail of the proper county for a period
not exceeding sixty days."

These defendants ask that the judgment of the justice
of the peace be reversed and the proceedings had before
him set aside for the following reasons:

1. It is argued that the title to the Act of 1895 is in-
adequate under section 3, article III, of the Constitution,
and that the Act of 1895 for this reason is unconstitu-
tional. ·

The title of the Act of June 18, 1895, P. L. 203, is,
"An act to provide for the more effectual protection of
the public health in the several municipalities of this
Commonwealth."

It is well settled that it is not necessary that the title
of an act embody all the distinct provisions of the bill in
detail, nor serve as an index or digest of its contents.
It was held in Sprague v. Baldwin, 18 Pa. C. C. 571, that
the title to this act is broad enough to cover all of the
municipal subdivisions of the Commonwealth down to
and including townships and school districts, and there
is nothing in subsequent decisions which disturbs the
ruling in that case.  The connotation of the word munici-
pality in the title is sufficient notice to townships and
school districts to put them on inquiry as to its contents.

2. It is argued that the Act of June 18, 1895, was repealed by the Act of May 18, 1911, known as the School Code.

In the light of recent decisions binding on this court, little discussion of this proposition is necessary. In Com. v. Aiken, 64 Pa. Superior Ct. 96, it was held that the Act of 1895 was not repealed by the Act of 1911. The same question was decided in Com. v. Gillan, 65 Pa. Superior Ct. 31, in which Judge ORLADY in an exhaustive opinion, held that "the Act of 1895 in so far as it relates to the same subject-matter as the Act of 1911, must be read into and construed with the latter act as a relevant constituent of the school law."

3. It is urged that the proceeding should have been brought in the name of the Commonwealth to the use of the school district of the township of Millcreek and the failure to join the school district to which the penalty is payable, is fatal and that the proceeding must fail for want of jurisdiction. In support of this proposition it is argued that Caufman's Case, 35 Pa. C. C. 417, and the cases therein cited, apply on the argument that in suits for summary conviction, the record of the justice of the peace must show that the magistrate had jurisdiction and if the penalty is payable to any person or corporation, suit must be instituted to the use of such person or corporation.

A careful examination of these cases and the acts of assembly construed by them leads to the conclusion that the above principle cannot apply to this case. The legislature by the 12th section of the Act of June 18, 1895, imposed a duty on school directors and others to refuse the admittance of unvaccinated children to the schools, and this duty having been imposed, the breach thereof is an offense criminal in its nature, (Com. v. Shields, 50 Pa. Superior Ct. 202) punishable upon conviction before a justice of the peace.

The present action is not qui tam for the collection of a penalty in the nature of an action of debt, notwith-

standing the penalty imposed is made payable to the school fund. It is a proceeding to convict for the violation of the law, and it cannot be said in this case as in Caufman's Case, supra, that the only party interested is the one who receives the fine, and that since the Commonwealth is not entitled to the fine, it has no interest. If the decisions have been correctly applied, this act of assembly is a state-wide compulsory vaccination law as to school children, enacted for the protection of the public health, and if this be so, the Commonwealth is interested in its enforcement. If it were necessary that the school district of Millcreek Township be made a party with the Commonwealth in this proceeding, an anomalous situation would result. The defendants in this case are a majority of the directors of the school district entitled to the fine imposed, and this being so it is reasonable to assume that the school district which they control would be a diffident, not to say unwilling prosecutor. We are of the opinion that the principles laid down in Com. v. Borden, 61 Pa. 276, govern this case. The act itself in section 21, directs proceedings to be for conviction, and this action is therefore properly brought in the name of the Commonwealth: Com. v. Wolf, 3 S. & R. 48. Conviction under the act is the purpose of this action; the payment to the Millcreek school district of the penalty imposed after conviction is incidental thereto. But even in the payment of the fine, the Commonwealth is interested, not as a beneficiary, but that the offenders be punished for the violation of a duty imposed by law.

4. It is urged that Millcreek Township is not a municipality in the sense contemplated by the Act of 1895, P. L. 204, as amended by the Act of 1919, P. L. 399, and that, therefore, the act does not apply.

"A municipal corporation, in its strict and proper sense, is a body politic and corporate constituted by the incorporation of the inhabitants of the city or town for the purposes of local government thereof," (Dillon on

Municipal Corporations, 31, (19)) called into existence either at the direct solicitation or by the free consent of persons composing it. In the strict sense of the term municipalities include only cities and towns and other like organizations with political and legislative powers for local civil government.

But there are other divisions of the State, as counties and townships, incorporated by general laws intended as agencies in the administration of civil government, sometimes styled political, sometimes public, sometimes civil, and sometimes municipal corporations, and (Dillon 32 (20)) in its broader sense the term municipal corporation or municipality is used to include these public or quasi corporations, the principal purpose of whose creation is as an instrumentality of the state, and not for the regulation of the local and special affairs of a compact community.

That townships are municipalities in this sense has been affirmed repeatedly by the decisions. Union Township v. Gibboney, 94 Pa. 536, Mr. Justice TRUNKEY says "Counties and townships are involuntary civil divisions of the state, incorporated by general laws, to aid in the administration of government. Their powers all relate to matters of state as distinguished from local concern, such as the administration of justice, and the establishment and repair of public highways. The statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all liabilities to which they are subject. Considered in respect to the limited number of their powers, they rank low down in the scale or grade of corporate existence; and hence have been frequently termed quasi corporations. This designation distinguishes them from private corporations aggregate, and from municipal corporations proper, such as cities or towns acting under charters, or incorporating statutes, and which are invested with more powers, and endowed with more functions and a larger measure of corporate life," quoting with approval on Municipal

Corporations, section 10a. Funk v. Township, 13 Pa.
C. C. 387, refers to "township or other municipality."
"In many cases the word township is used as a general
term to cover the several municipal divisions of a county
and where the intent so to use it becomes clear it should
be so construed by the court": Wilkes-Barre v. Luzerne
Co., 3 Kulp 302. "It appears upon reason as well as
authority that townships are quasi municipal corpora-
tions": Davis v. Henry, 32 Pa. C. C. 32. "Counties and
townships are sometimes said to be only quasi corpora-
tions or quasi municipal corporations because they have
no legislative power. But all of these—cities, boroughs,
counties and townships—are indiscriminately known as
municipalities": Dare v. Commissioners, 23 Pa. C. C.
648. "The legislation classifying townships did not have
its object changed in the essential nature and character
of the township as a municipal organization": Mill-
bourne Boro., 46 Pa. Superior Ct. 22. A township is
characterized as a municipality in Township v. Moore,
68 Pa. 404, in Township v. Wolf, 106 Pa. 610, in Coxe's
Case, 11 Pa. C. C. 639, and in Dreese v. Freed, 42 Pa.
C. C. 246. "Townships are clearly municipalities":
Keelar v. Westgate 10 D. R. 241. Townships are dis-
cussed as municipalities in McCormick v. Hanover Twp.,
246 Pa. 172. The term municipal corporation includes a
city, borough, township or county: McLaughlin v. Cor-
ry, 77 Pa. 112.

The Constitution also designates townships, munici-
palities in article IX, section 8, which restricts the limits
of the creation of "the debt of any county, city, borough,
township, school district, or other municipality or incor-
porated district," and in article IX, section 10, which
prescribes that "any county, township, and school dis-
trict or other municipality incurring any indebtedness
shall at or before the time of so doing provide for the
collection of an annual tax sufficient to pay the interest
and also the principal thereof within thirty years." And
in article XIV, section 6, which provides that "the gen-

eral assembly shall provide by law for the strict accountability of all county, township and borough officers as well as for the fees which may be collected by them, as for public or municipal moneys which may be paid to them."

The word municipality, in certain acts of assembly has been construed to include townships. The Act of April 21, 1858, which provides "All laws requiring municipal corporations to enter bail or file affidavits of defense are hereby repealed," has been held to include townships. The Act of April 26, 1893, which provides "that municipal corporations shall not be required to file affidavits of defense" applies to townships: Sprague v. Baldwin, 16 Pa. C. C. 568. In the same case the Act of June 18, 1895, was construed and in the opinion, Judge MORRISON held that a township is a municipality within the contemplation of the act.

This question has been recently decided in the unreported case Com. use School District v. Garling (Montgomery County) in which W. R. GILLAN, P. J., says, "For some purpose a township is not a municipal corporation, for others it is treated as such. We have no doubt that the 12th section of the Act of 1895 applies as well to townships as to incorporated boroughs. It is very significant, it seems to us, that when the law-making power came to enact other laws with reference to the protection of the public health they repealed every section of the said Act of 1895 except sections 12, 20 and 21."

Even a cursory examination of the above authorities will lead to the conclusion that the word municipality in the Act of 1895, supra, is used in its general and more comprehensive sense, and that in that sense townships are municipalities. We cannot escape the conclusion that the legislature intended to enact a state-wide law in the Act of 1895. The word municipal has a recognized wide meaning, and when the legislature in 1895 enacted a compulsory vaccination law for the protection of the

305, (1921).] Opinion of Court below—Opinion of the Court.

public health "in the several municipalities" its intent was the same as when in 1909, P. L. 855, it passed an act "to safeguard human life and health throughout the Commonwealth." It is significant that by this later act all of the Act of 1895 was repealed, excepting sections 12, 20 and 21. The inference is reasonable that the legislature considered these acts coincident in scope. In 1919 too, the legislature cited the Act of 1895 for amendment, and in effect reënacted sections 12 and 21 with minor changes. This is significant as expressive of intent for the reason that since 1895 that act has been construed by the courts and the term municipality defined in numerous cases, and we must assume that the action of the legislature in 1919 was in effect, an adoption of the construction and interpretation of the courts.

And now, May 7, 1920, the judgment is affirmed.

*Error assigned* was the judgment of the court.

*A. M. Milloy*, of *Milloy & Gilson*, for appellant.—Mill Creek Township is not a municipality within the intent of the Act of 1895, P. L. 203: Sprague v. Baldwin, 18 Pa. C. C. 568; Stull v. Reber, 215 Pa. 156; Trevorton Water Supply v. Zerbe Township, 259 Pa. 31; Wharton v. School Directors, 42 Pa. 358; Com. v. Beamish, 81 Pa. 389; Herrington's Petition, 266 Pa. 88.

*Bernard J. Myers*, Deputy Attorney General, and with him *William I. Schaffer*, Attorney General, and *M. Levant Davis*, for appellee.

OPINION BY ORLADY, P. J., March 5, 1921:

M. T. Wilkins, Bert. Thomas and J. Ross Barney, being all of the members of the school board of Mill Creek Township, Erie County, were convicted of a violation of the Act of June 18, 1895, P. L. 203, as amended by the Act of June 5, 1919, P. L. 399, and a fine of $25 was imposed

on each by an alderman, and on appeal to the court of quarter sessions, the judgment was affirmed.

The three defendants having inadvertently joined in a single appeal, two of them (Bert. Thomas and J. Ross Barney), by permission of this court, filed a discontinuance, and paid the fines imposed by the court below, when counsel elected to limit this appeal to that of M. T. Wilkins.

The question involved in this appeal is stated by the appellant to be "Is Mill Creek Township a municipality within the intent and meaning of the Act of Assembly of June 18, 1895, entitled 'An Act to provide for the more effectual protection of public health in the several municipalities of this Commonwealth'?" The material facts as disclosed by the record, are set forth in the opinion of the court below. In giving the meaning intended by the legislature, to the word "municipality" as used in the title to this act, and the subsequent legislation depending upon it, we are not controlled by refined distinctions as to the origin of the term or its technical meaning as given in particular cases. A number, in addition to those cited in the opinion of the court below, hold that a school district is not a municipal corporation, and others as distinctly, that it is a quasi-municipality. This apparent confusion depends on the character of the questions presented for decision, and each case has a convincing reason for the conclusion reached. The right to assess taxes, the liability in damages for property taken for municipal improvements, or for negligence, the authority to build or sell, furnish some of the many phases of the questions presented. The facts in this case are clearly stated, and when we consider the aim and purpose of the legislature, there can be but one meaning ascribed to the term "municipalities" as used in the act referred to. The purpose of the legislation is clearly defined in its title—to provide for the more effectual protection of the public health.

We have in this State, townships and school districts having a population equivalent to that of some cities, and to hold that this act would be operative in one and not in the other, when its sole purpose is to prevent the spread of communicable diseases throughout the Commonwealth, and which are always liable to affect both, would be unreasonable.

A school district is a quasi corporation for the sole purpose of administering the Commonwealth's system of public schools, and vitally associated with the education of the children in protecting their health, so that it is reasonably embraced within the designation of "municipality."

Essentially and intrinsically, the schools in which are educated and trained the children who are to become citizens, are matters of State and not of local jurisdiction. In such the State is the unit and the legislature the source of power. In addition to corporations and quasi corporations formed for purposes of general and local administration, the legislature frequently organizes the people of a certain territory into a district, having limited powers for the purpose of carrying out some particular purpose. Familiar examples are school districts, road districts, fire districts and the like. Such are mere quasi corporations, but it has been held that such a district is "a corporation for municipal purposes within the meaning of the constitutional provision." See cases 19, Ruling Case Law 698, and 28 Cyc. 125.

There are public bodies which are not corporations or even municipalities in the technical sense, but resemble them in that they have some of the attributes of one or the other, and which, therefore, are called quasi corporations. Between the two extremes are a large number of districts created as agencies of government with varied degrees of organization, including counties, townships, school districts and the like, that must be dealt with as such. The term as applied to such bodies as school districts or counties is given by reason of the limited num--

ber of their corporate powers; such designation being used to distinguish them from corporations aggregate, and municipal corporations proper, as cities or towns acting under charters or incorporating statutes.

It was held as early as Wharton v. School Directors, 42 Pa. 358, that school districts are not strictly municipal corporations, but mere territorial divisions for limited purposes and belonging to the class of quasi corporations which exercise some of the functions of a municipality within a prescribed sphere: Briegel v. Phila., 135 Pa. 451. Such bodies, although not municipal corporations, nor municipalities in the proper sense, must be construed as falling within such terms in a constitution, statute or other instrument, if such appears to be the intention. They are created solely as governmental agencies for the purpose of administering the general laws of the State: 28 Cyc. 130; 24 R. C. L. 562.

It must be conceded that in common speech the term "municipality" is frequently used to include public, political, corporate or quasi corporate subdivisions of the state. The word "municipal" as originally used in its strictest sense, applied to cities only, but now has a much more extended meaning, and when applied to corporations, the words "municipal" "political" and "public" are often used interchangeably. See cases cited in "Words and Phrases" 2 S., vol. 3, p. 469, and vol. 4, p. 86.

While school districts are the agents of the State for the purpose of administering the State system of public education and have only such powers as are plainly expressed or given by necessary implication, they deal with matters of such vital public interest that unless they are clearly excluded from all fair meaning of the word "municipalities" it would be a strange construction to hold that they were not within its statutory intendment. As an evidence of such exclusion, see opinion by Simpson, J., filed February 21, 1921: Long v. School District of Cheltenham, 269 Pa. 472.

As said in Stull v. Reber, 215 Pa. 156, "The act is not a penal statute, it is a broad general act relating to the health of the whole population of the Commonwealth. It is not, therefore, to be construed or administered by the rigid technical rules applicable to penal laws, but fairly, according to its intent, neither narrowing it to the letter to the exclusion of cases clearly within such intent, nor stretching it beyond its legitimate scope to cover matters not clearly meant to be included. It is an act touching very closely common rights and privileges, and, therefore, especially requiring a common sense administration. See opinion filed this day by LINN, J., in Commonwealth v. Butler.

For the reasons above given, the judgment is affirmed, the record remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal on this case was made a supersedeas.