# Lehigh Coal & Navigation Co. *v.* Summit Hill School District et al.

*School Law—School districts—Building contract—Fraudulent contract—Allotting contract not in accord with specifications—Liquidated damage clause—Corporate surety—Workmen's compensation provision—Municipal division—Act of July 18, 1917, P. L. 1083.*

1. A contract allotted by a board of school directors to a person not the lowest bidder for the construction of a school building, will be declared void as fraudulent, where it appears that, although the specifications called for a penalty for delay beyond the time fixed for the completion of the building, and for a surety company's bond, the directors allotted the contract omitting the penalty for delay and providing for personal instead of corporate security.

2. A contract for the building of a schoolhouse which fails to comply with the Act of July 18, 1917, P. L. 1083, enjoining that the contractor for municipal construction work shall accept the provisions of the Workmen's Compensation Act, is void, whether

the directors awarding the contract were aware of the requirements of the act or not.

3. A school district is a "municipal division or subdivision of the Commonwealth," within the meaning of the Act of 1917.

Argued February 7, 1927. Before FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 138, Jan. T., 1927, by William L. Davis, Thomas Malkin, Evor P. Hughes, members of school board, and Andrew Breslin, from decree of C. P. Carbon Co., Oct. T., 1925, No. 1, on bill in equity, in case of Lehigh Coal & Navigation Co. v. Summit Hill Borough School District, Wm. L. Dairs et al., directors of said district, and Andrew Breslin. Affirmed.

Bill for injunction. Before BARBER, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants, members of school board, and Andrew Breslin, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Frank X. York*, with him *John O. Ulrich*, for appellants.—The bill does not allege that the school directors of the school district of the Borough of Summit Hill abused the discretion which is vested in them by law: Com. v. Wenner, 211 Pa. 637; Roth v. Marshall, 158 Pa. 272.

The bill does not allege that the school board of the school district of the Borough of Summit Hill acted in an unlawful or fraudulent manner in awarding the contract in question to Andrew Breslin: Del. County's App., 119 Pa. 159; Wilson v. Blaine, 262 Pa. 367; Cook v. Tel. Co., 21 Pa. Superior Ct. 43.

The injunction is a mere nullity and the decree directing it should be reversed: Erie R. R. v. Casey, 26 Pa. 287, 291; Makof v. Sherman, 36 Pa. Superior Ct. 624.

*George M. Roads,* with him *Freyman, Thomas & Branch,* for appellees.—Where a statute provides a formal mode of making municipal contracts, such provision is mandatory and must be observed: Com. v. Jones, 283 Pa. 582.

The contract was invalid: Edmundson v. School Dist., 248 Pa. 559; Smith v. Phila., 227 Pa. 423; Dolan v. Schoen, 261 Pa. 11; Carpenter v. Boro., 208 Pa. 396; Louchheim v. Phila., 218 Pa. 100; Mazet v. Pittsburgh, 137 Pa. 548; Phila. Co. v. Pittsburgh, 253 Pa. 147.

OPINION BY MR. JUSTICE FRAZER, March 14, 1927:

The Summit Hill Borough School District, desiring to erect a new school building, prepared plans and specifications and advertised for proposals to do the work. A number of bids were received by the board and opened August 5, 1925, and the contract awarded to Andrew Breslin for the sum of $129,792, whose bid was not the lowest, that of the Tamauqua Construction Company, a business competitor, being for $128,583, or $1,209 less than that of the person to whom the contract was awarded. The Lehigh Coal & Navigation Company, a taxpayer within the district, filed its bill to have the contract declared void, and the directors enjoined from proceeding with the erection of the building, joining the school district, the directors and Breslin as parties defendant, and averring (1) the contract between the school district and Breslin was void, owing to fraudulent conduct on the part of the successful bidder, previous to the award, in attempting to stifle bidding and prevent competition; (2) the specifications were ignored by the directors after awarding the contract, by eliminating therefrom a provision for liquidated damages for delay in completion of the work, beyond the time specified in the specifications; (3) a further provision requiring the contractor to furnish the bond of a surety company to insure completion, was modified by permitting the contractor to substitute an individual

surety; and (4) the contract was awarded in violation of the Act of July 18, 1917, P. L. 1083, providing that contracts with any municipal division or subdivision of the Commonwealth, involving the employment of labor, shall contain a provision that the contractor must accept the terms of the Workmen's Compensation Acts. Upon hearing on bill and answer the court entered a decree declaring the contract illegal and enjoined the parties from proceeding with the construction of the building, or the performance of work thereon. From that decree we have the present appeal by Breslin, the contractor, and Davis, Malkin and Hughes, three of the school directors.

No requests for findings of fact and conclusions of law were presented by either of the parties, the court however, in its opinion under the heading "statements," made findings which were not excepted to, save as to what was asserted to have taken place previous to the letting of the contract. The record discloses no material dispute concerning the facts of the case.

The record contains evidence that, a short time before the day set for awarding the contract, three members of the school board, including the president and secretary, visited one of the officers of the Tamaqua Construction Company and suggested that his company either refrain from bidding on the work in question or make its bid high, giving as a reason for the request that Breslin, to whom the contract was subsequently awarded, had "something on the secretary" of the school board, and that they would award the contract to Breslin without regard to whether or not his proposal was the lowest, and further that afterwards one of the members of the board, at the request of Breslin, offered to the vice-president of the Tamaqua Construction Company what purported to be a roll of money for the purpose of inducing the latter to abstain from bidding. The representative of the company refused to accept the money, and filed a bid with the board, which in fact, proved to be the lowest

proposal received by the directors. Notwithstanding the difference in favor of the school district, the board awarded the contract to Breslin.

The above evidence was denied and the court below, in its opinion, stated that it did not deem it necessary to determine the correctness of either version of what occurred at the several interviews referred to, previous to awarding the contract, but that the explanation given by appellants as to the purpose of their visit to the Construction Company, did not create a favorable impression, and, further, that "their conduct does not comport with that of honest officials desiring to do their duty in the important matter entrusted to them." The court expressly stated that it made no direct finding with respect to this transaction or to its effect, because it preferred to place its decision on another ground, to wit, changes made in the contract subsequent to making the award to the successful bidder, and failure to comply with required statutory provisions.

The published notice soliciting proposals stipulated that the building should be completed on or before August 1, 1926, and that the contractor should forfeit $50 for each day thereafter necessary to complete the work. The specifications also required the contractor to furnish a "surety bond" to be "placed with such agency and company as the school board will direct." Following the awarding of the contract, the board, at the request of Breslin, changed the form of the contract by eliminating the fifty dollar penalty clause and further permitted the substitution of a personal bond for the surety company obligation. The natural result of these alterations was to benefit the successful bidder at the expense of the public treasury. Such action was also unfair to other bidders and made a farce of the statutory proceedings designed to safeguard the expenditure of public funds and prevent the favoring of personal and political friends of office-holders. Building contracts, especially those of a public nature, customarily

provide for liquidated damages in event of delay in completing the work, and this penalty is quite frequently a material consideration in estimating on the work: Edmundson v. Pittsburgh School District, 248 Pa. 559, 562. To receive from one contractor a bid based on the existence of such provision and from another a proposal based on its nonexistence, is not competitive bidding; and to relieve the successful bidder from such condition after his bid has been accepted assures to him an unfair advantage over other bidders at the expense of the public. Private negotiations between the municipality and the successful bidder, whereby the terms and conditions of the contract are so changed as to benefit the contractor, are contrary to the purpose and spirit of the acts designed to secure competition. If a change or alteration is found necessary or desirable, good faith and common honesty demand a readvertisement with notice of the new conditions, that all bidders may have an equal opportunity to present proposals subject to the new conditions: Louchheim v. Phila., 218 Pa. 100; Flinn v. Phila., 258 Pa. 355; Page v. King, 285 Pa. 153, 159.

The specifications in the present case required the contractor to maintain workmen's compensation insurance, as provided in the Workmen's Compensation Act of 1915, and also compliance with the provisions of the Act of July 18, 1917, P. L. 1083, requiring that all contracts executed "by any municipality, or any officer or bureau or board thereof, or by any municipal division or subdivision of the Commonwealth, which contracts shall involve the construction or doing of any work involving the employment of labor, shall contain a provision that the contractor shall accept......the provisions of the Workmen's Compensation Act of 1915 ......and the said contractor will insure his liability thereunder, or file with the Commonwealth, or the municipal corporation or board with whom the contract is made, a certificate of exemption from insurance......" Section 3 of the act provides that "any contract executed

in violation of the provision of this act shall be null and void." That Breslin did not comply with this requirement is admitted and the only reason given in excuse for the omission is that the directors were not aware of such requirements. They were bound to know the law, and this explanation is entitled to little weight, especially in view of the provisions in the specifications relating to compensation insurance. But, in any event, the language of the act is mandatory, and, in view of the express provisions of section 3 that a contract executed in violation of any of the provisions of the act is void, further discussion in this respect is unnecessary. Appellants argue, however, that a school district is not a "municipal division or subdivision of the Commonwealth" within the Act of 1917. We are of opinion that the act was not intended to receive such a narrow construction. Its purpose was to relieve the municipality from liability for injury to workmen employed by contractors engaged in public work. We find no indication of a purpose to discriminate between contracts made by school boards and contracts made by other public officials or bodies having the power to contract for public improvements. Although school districts, strictly speaking, are not municipal corporations within the technical meaning and construction of that term, they are frequently included within such expression where municipalities are referred to in a broader sense, either in common speech or in statutes. Districts of that character occupy the position of quasi corporations for the purpose of administering the public school system of the Commonwealth, and, while these districts possess only such powers as are expressly or by necessary implications given them, "they deal with matters of such vital public interest that unless they are clearly excluded from all fair meaning of the word 'municipalities,' it would be a strange construction to hold they were not within its statutory intendment": Com. v. Wilkins, 75 Pa. Superior Ct. 305; Com. v. Wilkins, 271 Pa. 523, 526. A school district is

clearly a "municipal division or subdivision" within the meaning of that clause in the Act of 1917.

The decree of the court below is affirmed at appellants' costs.